# Langley *et al. v.* Andrews.

*Bill in Equity to Foreclose a Mortgage.*

1.  *Equity pleading; no reversible error to fail to pass upon a demurrer.*—Where a bill in equity is not subject to a demurrer interposed thereto, the fact that the chancellor omitted to rule upon said demurrer, notwithstanding it was embraced in the note of submission, constitutes no error prejudicial to the respondent.

2.  *Equity pleading; when answer of one of defendants can be considered and read as evidence.*—As a general rule, the answer of one defendant is not good against another, but when the right of a complainant as against one defendant is only prevented from being complete by some question between the complainant and a second defendant, the answer of the second defendant may be considered and read in evidence.

3.  *Bill to foreclose mortgage; when answer of the assignor of the mortgage will be considered and read in evidence against the mortgage.*—Where the assignee of a mortgage files a bill against both the mortgagor and assignor to foreclose said mortgage, and execution of the mortgage is proved, and the assignor by answer admits the assignment, the complainant will be entitled to a decree, notwithstanding the mortgagor may deny all knowledge of the assignment.

[Langley *et al.* v. Andrews.]

4. *Execution of written instrument; what constitutes duress rendering instrument voidable.*—It is not the threat of a criminal prosecution in any case that constitutes duress which is deemed sufficient to avoid contracts, or to render invalid the execution of a written instrument, but the threat of criminal prosecution must be of such a nature and made under such circumstances as to constitute a reasonably adequate cause to control the will of the ·threatened person, and must have that effect, and the acts sought to be voided must be performed by said person while in such condition.

5. *Same; duress; ratification.*—A contract made under duress is only voidable and, therefore, the party upon whom duress has been imposed subsequently recognizes the validity of the contract involved, either by making payments thereon or otherwise, he will be held to have elected to, waive the duress and ratify the contract.

6. *Mortgage; stipulation for payment of attorney's fee.*—The provision contained in a mortgage that the proceeds of the sale from the mortgage should be devoted, first, to the payment of the expenses of said sale, "including a reasonable attorney's fee for collecting said sum, whether by foreclosure of under order of sale, or by proceedings in court or otherwise," is sufficient to authorize the allowance of an attorney's fee for filing a bill in equity to foreclose said mortgage.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. RICHARD B. KELLEY.

The appeal in this case is prosecuted from a final decree granting the relief prayed for by the complainant. The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

JAMES W. STROTHER, for appellant.—An attorney's fee cannot be allowed for a foreclosure in equity unless there is shown a necessity for resorting to that method.—*Bedell v. Mortgage Co.*, 91 Ala. 325; *Am. &c. Mortgage Co. v. McCall*, 96 Ala. 200. The defnse of duress being fully made out, respondent Langley was entitled to a decree dismissing complainant's bill; a contract, the execution of which was induced by threats of criminal prosecution and imprisonment, is void; and it makes no difference whether the threats were of lawful or of unlawful imprisonment, this is equally true.—*Hartford Fire Ins. Co. v.*

[Langley *et al.* v. Andrews.]

*Kirkpatrick, Dunn & Co.,* 111 Ala. 456, and authorities therein cited.—*Morse v. Woodworth,* 155 Mass. 251, which is cited with approval and quoted from extensively in the above case is a very strong authority in support of the contention here made and fully supports the insistence of the appellant on this point.—See also *Brown v. Pierce,* 7 Wall. (U. S.) 215; *Fillman v. Ryan,* 168 Past. 484; *Heckman v. Swartz,* 64 Wis. 48; *Phelps v. Zuschlay,* 34 Tex. 371.

E. M. OLIVER, *contra.*—It is true that, as a rule, the answer of a defendant cannot be read as evidence against a co-defendant, but there are exceptions. In cases, however, where the right of the plaintiff as against one defendant, is only prevented from being complete by some question between the plaintiff and a second defendant, the plaintiff is permitted to read the answer of such second defendant for the purpose of completing his claim against the first.—1 Dan. Ch. Pr., 4 Ed. 842, Chap. 22, sec. 1; *McLane v. Riddle,* 19 Ala. 180; *Green v. Casey,* 70 Ala. 417. The evidence is not sufficient to avoid the mortgage on the ground of duress.—*Wildsmith v. Tracy,* 80 Ala. 258.

DENSON, J.—On the 16th day of June, 1904, W. T. Langley executed to one A. H. Slaughter, his note under seal in the sum of twenty-five hundred and seventy-nine and 68-100 dollars, due October 15th, 1894, and a mortgage on certain real estate to secure said note.

On the 14th day of September, 1904, the said note and mortgage were assigned by the mortgagee to S. M. Inman & Company. On the 9th day of September, 1895, S. M. Inman & Company, assigned the note and mortgage to J. E. Andrews, who as such assignee, on the 1st day of May, 1897, filed the bill in this case for the purpose of having said mortgage foreclosed. During the progress of the litigation, J. E. Andrews died, and the cause was revived in the name of Walter Andrews as the administrator of his estate.

W. T. Langley and A. H. Slaughter, the mortgagor and mortgagee, with Sandy Rowe, James Carpenter, Leonard Rainey, T. A. Hicks and W. T. Slaughter were made par-

ties respondent to the bill, as originally filed, it being alleged in the bill that the five last named persons were in possession of the lands involved in the litigation; that their interest was unknown but was subordinate to the mortgage.

On a former appeal, it was held, that the assignment made of the mortgage to J. E. Andrews by S. M. Inman & Company, was not in requisite form to convey the legal title and, therefore, that they were necessary parties to the bill.—*Langley v. Andrews*, 132 Ala. 147. The bill was thereupon amended by making S. M. Inman & Company and the individuals composing the firm parties.

This amendment avers that S. M. Inman & Company, is a firm having its principal place of business in Atlanta, in the state of Georgia; that said firm is composed of S. M. Inman and W. H. Inman.

The respondent, Inmans and A. H. Slaughter answered the bill as last amended; in their answers they admitted all of the allegations of the bill and disclaimed any interest in the subject matter of the suit.

Decrees *pro-confesso* were entered against all of the other respondents except W. T. Langley, and he alone defends against the bill.

The defense made by Langley's answer as to the merits of the case are, that the note for the security of which the mortgage was given is wholly without consideration; that he was not indebted to the mortgagee in any sum; that the note and mortgage were executed by him under duress, and payment of the mortgage indebtedness.

In the answer of Langley is incorporated a demurrer to the bill as last amended, upon the ground that the amendment making S. M. Inman & Company parties, fails to show that S. M. Inman and W. H. Inman are the only members of the firm of S. M. Inman & Company, and that there is no prayer for relief against said parties.

The chancellor on final hearing rendered a final decree in which he ascertained the amount due on the note and mortgage and ordered a foreclosure of the mortgage.

In the final decree the chancellor omitted to rule upon the demurrer to the bill, notwithstanding it was embraced in the respondent Langley's note of submission.

This omission in the decree is presented for review by the first and second assignments of error.

Upon an examination of the bill as last amended, we conclude that the averments therein fully answer the demurrer, and while it may have been a more orderly course of procedure for the chancellor to have made a specific ruling upon the demurrer, yet, the demurrer being without merit, there was no error prejudicial to respondent in the omission of the chancellor to pass upon the demurrer directly.

It is next contended by the respondent, appellant here, that the allegations of the amended bill were not sustained by proof, and that without such proof the final decree in favor of the complainant was erroneous. This contention, as shown by brief of counsel relates only to the averments as to S. M. Inman & Company's interest. We have shown above the amendment relating to this matter.

The record shows that S. M. Inman and W. H. Inman filed answers to the bill as amended in which they admitted all the allegations of the bill, and especially do they aver in their answers that they have no interest whatever in the lands conveyed by the mortgage to complainant.

"It is a general rule, with but few exceptions, that the answer of one defendant is not good against another. Yet when the right of a complainant as against one defendant is only prevented from being complete, by some question between the plaintiff and the second defendant, the answer of the second defendant may be read as evidence. Thus, if a mortgage is assigned, and the assignee files a bill against both the mortgagor and assignor, and the mortgage is proved and the assignor admits the assignment, the complainant will be entitled to a decree, notwithstanding the mortgagor may deny all knowledge of the assignment. The reason of this is, that the mortgagor has no interest in the assignment, and as the answer of the assignor estops him, the equity of the assignee is complete."—*McLane & Plowman v. Riddle & Burt,* 19 Ala. 180; *Green v. Casey,* 70 Ala. 417.

In the case of *Moore v. Hubbard,* 4 Ala. 187, which was a suit for the settlement of partnership accounts,

partners who had sold their interest, were defendants to the bill, and they admitted the transfer by their answer. The court held that the answer could not be read as evidence of the transfer against the other defendants. The court commenting on this ruling in the case of *McLane & Plowman v. Riddle & Burt, supra,* said: "The error of this opinion consists in this, that the answer of the partners who had transferred their interest would bind them, and would always be evidence as between them and the complainant of the transfer, and they never could afterwards successfully assert their interest." So we conclude there is no merit in this contention of the appellant.

The sixth assignment of error is not insisted upon in the brief and argument of counsel and we will pass it.

This brings us to the consideration of the defense that the note and mortgage were given under duress: With respect to this defense, the respondent in the second paragraph of his answer makes the following averment; "Further answering said bill the respondent says, that he denies that on the 16th day of June, 1894, he was indebted to A. H. Slaughter. He admits that on said day he executed to said Slaughter a note and mortgage as described in said paragraph two of the bill, but he avers and alleges that said note and mortgage were obtained from him under duress by threats of criminal prosecution made to this respondent by one J. S. Akers, who was the agent of A. H. Slaughter and S. M. Inman & Company in said transaction, and he further avers that said note and mortgage to the said A. H. Slaughter were wholly and entirely without consideration because this respondent was not indebted to the said Slaughter in any manner, and he did not receive from the said Slaughter at the time of the execution of said note and mortgage, any money or anything else as the consideration for said note and mortgage; but this respondent avers and alleges that he was induced to sign said note and mortgage by said threats of prosecution."

Certainly these averments as to duress are of a very general nature and are mere conclusions of the pleader. The character of the threats, and of the criminal prosecution is nowhere disclosed in the pleading, and we must

find it, if it existed, in the evidence adduced upon the subject.

"The general rule of law is well established, on reasons of justice and sound policy, that contracts, in order to be valid and binding, must be the result of the free assent of the parties. Therefore, duress, either of actual imprisonment or *per minas*, constitutes a good defense to an action on a contract in behalf of those from whom contracts have been thus extorted. Duress by menaces, which is deemed sufficient to avoid contracts, includes a threat of imprisonment, including a reasonable fear of loss of liberty."—*Robinson v. Gould*, 11 Cush. 55. "It is not the threat of criminal prosecution in any case that constitutes duress, but the condition of mind produced thereby. The threat must be of such a nature, and made under such circumstances, as to constitute a reasonably adequate cause to control the will of the threatened person, and must have that effect, and the act sought to be avoided must be performed by the person while in such condition."—*Wolff v. Bluhm*, 95 Wis. 257; S. C. 60 Am. St. Rep. 115; *Flanigan v. City of Minneapolis*, 36 Minn. 406.

In the case of *Hartford Ins. Co. v. Kirkpatrick*, 111 Ala. on page 467, discussing this subject, it was said by this court; "It cannot, of course, be said that the fact, that a payment or contract is made or induced from a mere fear of imprisonment. if it should not be made, affords any reason for avoiding the payment or contract on the ground of duress. But if the fact that the person making the same is liable to arrest and imprisonment is used as a threat to overcome his will and compel a settlement which he would not have made voluntarily, it will amount to duress. The question in every case is whether his liability to imprisonment was used against him by way of threat to force a settlement. If so, the use was improper and unlawful, and if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they did overcome his will, he may avoid the settlement."—*Barrett v. Mahnken*, 6 Wyo. 541; S. C. Am. St. Rep. 953; *Rendleman v. Rendleman*, 156 Ill. 568; *Higgins v. Brown*, 78 Me. 473; *Shattuck v. Watson*, 7 L. R. A. 551 and notes thereto.

The question of duress *per minas, vel non,* is one of fact in the particular case.—10 Am. & Eng. Ency. Law, (2nd ed.), p. 326. Conceding that Akers was the agent of the mortgagee Slaughter, and that the Slaughter mortgage was the one he had in mind, was speaking about and trying to procure from respondent at the time he made the threat attributed to him, yet, when the defense of duress is tested by the above principles of law, we cannot say that the chancellor's conclusion upon the evidence adduced in support of the defense is erroneous.

"In general, a contract made under duress is only voidable, and not void; hence the one on whom duress has been imposed may either repudiate or affirm it."—10 Am. & Eng. Ency. Law, (2nd ed.), page 334, and citation of authorities under note 1. It has also been held that if the party upon whom duress has been imposed recognizes the validity of the contract involved, either by making payments thereon or otherwise, he will be held to have elected to waive the duress and ratify the contract.—10 Am. & Eng. Ency. Law, (2nd ed.), page 337 and citation in note 1.

The record in this case shows that the complainant, J. E. Andrews was examined as a witness, and *inter alia,* he testified that W. T. Langley (the respondent), first informed him that S. M. Inman & Company held the note and mortgage against him and requested him to buy them.

As suggested in the brief of counsel for appellee, the first note of submission shows that this testimony of J. E. Andrews was taken prior to June 20th, 1898, and was published and open to the inspection of the respondent at that time, and by an order made March 1st, 1899, the chancellor set aside the submission and gave each party the right to take additional testimony and to re-examine any witness theretofore examined. The cause was not again submitted until December 7th, 1899, and the respondent has never denied nor sought to contradict this testimony of J. E. Andrews. We feel that we are fully warranted in presuming that the evidence is true and was so regarded by the respondent, or he would have contradicted it. If then, Andrews bought the note and mortgage at Langley's request, it would seem, that upon the

plainest principles of equity jurisprudence, Langley, by
his own conduct, effectually estopped himself from set-
ting up the defense against them which he has attempted
to set up in this suit.—*Wilkinson v. Searcy,* 74 Ala. 243;
*Auerbach v. Pritchett,* 58 Ala. 451; 3 Mayfield's Digest,
p. 422, § 264, p. 424 § 311 p. 425 § 346.

There is abundant evidence in the record tending to
show consideration for the note and mortgage and also
in refutation of the defense of payment.

It is insisted by the appellant that the chancellor erred
in the amount decreed to be due to the complainant. We
have computed the interest on the note according to its
terms, from the date of its maturity to the date of the
decree of foreclosure, and allowing the complainant ten
per cent. attorney's fee on the amount of principle and
interest due on the note, we have found no error preju-
dicial to the appellant.

But, it is insisted that under the terms of the mortgage
the complainant is not entitled to an allowance for at-
torney's fees. This insistence is rested upon the prop-
osition, that such fee cannot be allowed for a foreclosure
in equity unless there is shown a necessity for resorting
to that method. The cases of *Bedell v. Mortgage Co.,* 91
Ala. 325; *American Freehold Land Mortgage Company
of London, Limited v. McCall,* 96 Ala. 200, are cited in
support of appellant's insistence. In each of the cases
cited the mortgage contained a power of sale in which was
stipulated the payment of attorney's fees, "if it shall
become necessary to employ an attorney to foreclose this
mortgage, or collect any part of the debt therein secured."
It was ruled, that a Solicitor's fee for filing a bill to fore-
close could not be allowed unless a necessity was shown
for resorting to that remedy; the correctness of the ruling
cannot be denied.

The mortgage involved in this suit, however, does not
contain the provision found in the mortgages involved
in the cases above cited, but the provision with reference
to allowance of attorney's fees is as follows, namely,
"the proceeds of sale to be devoted, 1st, to the payment of
expenses of said sale, advertising, etc., including a rea-
sonable attorney's fee for collecting said sum, whether
by foreclosure or under power of sale, or by proceedings

43c

in court or otherwise." Thus the case is withdrawn from the influence of the cases relied upon by appellant, and is controlled by the case of *Stephenson v. Allison*, 123 Ala. 439.

The note stipulates for ten per centum attorney's fee, and under the influence of the case last above cited, the chancellor in ascertaining the amount of the mortgage indebtedness was authorized to allow the attorney's fee of ten per centum.

We concur in the conclusions reached by the chancellor, and having discovered no error in the record the decree of the chancery court must be affirmed.

Affirmed.

McCLELLAN, C. J., HARALSON and DENSON, J.J., concurring.