(93 South. 409)

## CITY OF ANNISTON v. ALABAMA WATER CO. (7 Div. 253.)

(Supreme Court of Alabama. April 6, 1922. Rehearing Denied May 11, 1922.)

**1. Specific performance ⬅59 — No enforcement until contract requirement for appointment of referees to determine value fulfilled.**

An executory contract for the sale of property, by the terms of which the price to be paid for the whole subject-matter is to be determined by appraisers to be selected directly or indirectly by the parties cannot be specifically enforced, so long as there is a failure from any cause to appoint referees to assess the value.

**2. Specific performance ⬅126(1)—Determination by court of value of water plant sold proper on failure of arbitrators to do so as provided by contract.**

Where contract for the sale of a water plant at a fixed price, plus the cost of all extensions and improvements, less 1 per cent. depreciation, provided for appointment of arbitrators to assess the value, such assessment was a mere subsidiary, and, when the arbitrators failed to fix the value, the court, in a suit for specific performance, could otherwise ascertain the value.

**3. Municipal corporations ⬅918(1)—Assumption by city of outstanding bonds of water company held not an unconstitutional issuance of bonds without majority vote.**

On purchase of a water plant by a city, the assumption of the payment of the face value of the outstanding bonds issued by the water company in a sum not exceeding $425,000 held not an issuance of bonds by the city, contrary to Const. 1901, § 222, requiring a majority vote, but was authorized by Code 1907, § 1261, as amended by Acts 1911, p. 565.

**4. Municipal corporations ⬅918(1)—Constitutional limitation as to bond issue on majority vote construed.**

Const. 1901, § 222, relating to issuance of bonds by a city under majority vote, deals only with bonds issued in the usual and ordinary way, and is no restraint as to the assumption of debts other than by issuance of the city's own bonds.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Specific performance ⟨key⟩105(1)—Bill for enforcement of contract for purchase of water plant held not premature.**

Where a contract for the purchase of a water plant by a city fixed a certain date for its final consummation and for the determination by arbitration of the value of certain auxiliaries to the system, a bill by the city for specific performance filed on such date was not premature; the bill disclosing abandonment of arbitration and the impossibility of determining the value between the filing thereof and such date.

**6. Specific performance ⟨key⟩57—Option to purchase water plant by city held mutual and enforceable after acceptance.**

A contract whereby a city had an·option to purchase a water plant was, after the exercise of the option, mutually binding, so that either the city or the company could maintain a bill for specific performance.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Bill by the City of Anniston against the Alabama Water Company for specific performance of contract. From a decree sustaining a demurrer to the bill, complainant appeals. Reversed, rendered, and remanded.

Tate & Logan and Merrill & Allen, all of Anniston, for appellant.

Where agreement to submit to arbitrators is a subordinate part of contract, it may be disregarded, and the rest of the contract specifically enforced. 36 Cyc. 578; 87 Ala. 245, 6 South. 113, 4 L. R. A. 616; 77 Mo. 441; 96 Ind. 333, 49 Am. Rep. 161; 141 Ala. 593, 37 South. 590; 147 Ala. 408, 40 South. 757; 25 R. C. L. 113; 146 Fed. 8, 76 C. C. A. 516, 8 Ann. Cas. 660; 19 R. I. 413, 34 Atl. 359, 32 L. R. A. 740; 65 Kan. 219, 69 Pac. 176. The contract providing for assumption of bonds by the city is not in violation of section 222 of the Constitution of Alabama of 1901. Objection that the city was not authorized to enter into contract cannot be made by defendant in order to defeat same. 19 R. I. 413, 34 Atl. 359, 32 L. R. A. 740.

Knox, Acker, Sterne & Liles, of Anniston, for appellee.

An action for specific performance cannot be maintained, unless there is mutuality of remedy. 36 Cyc. 622, 629; 72 Ala. 467; 155 Ala. 575, 47 South. 88. The chancery court is without authority to carry out mere agreements to submit matters in controversy to arbitration. 157 Ala. 124, 47 South. 268; 87 Ala. 245, 6 South. 113, 4 L. R. A. 616; 3 Eq. Cas. (L. R.) 532; 14 Vesey, 400; 6 Vesey, 34; 3 M. & W. 786; 1 Benj. on Sales, 54; 2 Benj. on Sales, 755; 20 Eq. Cas. (L. R.) 511; 5 Ch. App. Cas. 521; 26 Beav. 306; 27 Mo. 21; 52 Mo. 153; 58 Mo. 202; 70 Mo. 69; 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380. The bill is without equity, in that the city is without authority to assume the outstanding bonds of the defendant. Const. Ala. 1901, § 222; 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95, 106 Am. St. Rep. 201, 2 Ann. Cas. 978; 147 Ind. 466, 44 N. E. 593, 33 L. R. A. 221; 182 Ala. 475, 62 South. 83, Ann. Cas. 1915D, 436.

ANDERSON, C. J. [1] This bill is filed to specifically enforce a contract between the appellee and appellant, and, while two contracts are referred to, one of 1910 between the appellant and appellee's predecessor, and the other of 1920 between the appellant and appellee, the last contract is intended as a confirmation of the 1910 one by the appellee, as modified by the one of 1920, and which said last contract is the one sought to be enforced. It seems to be a well-settled principle of law that an executory contract for the sale of property, by the terms of which the price to be paid for the whole subject-matter is to be determined by appraisers, to be selected directly or indirectly by the parties, cannot be specifically enforced in equity, so long as there is a failure from any cause to appoint referees, or after appointment, to assess the value. Montgomery Gas Co. v. Montgomery, 87 Ala. 245, 6 South. 113, 4 L. R. A. 616. In the cited case relief was denied, as the price for the entire subject-matter of the sale was to be fixed by appraisers; but this court expressly recognized a different rule, where the thing to be appraised by such valuers constitutes only a minor part of the subject-matter of the contract, "as, for instance, where land is purchased at a fixed price, but the contract of sale includes fixtures, or timber, or furniture, the valuation of which is to be determined by third persons." As we understand it the contract here fixes the purchase price of the water plant at $400,000, "plus the cost of all extensions of pipe lines, improvements on pumping station and reservoir, and the cost of replacing equipment, on the 30th day of June, 1910, with new equipment of greater capacity, such cost to be estimated· by the difference between the equipment of the same capacity now in use and the equipment of larger capacity which may have been installed; the price to be diminished, however, by a depreciation of 1 per cent. per annum from June 20, 1910, to the date of exercising the right to purchase. The value of all extensions, improvements, etc., above mentioned shall be fixed by arbitration as hereinafter provided."

This contract provides for the purchase of the plant, or system, as it stood June 10, 1910, at the fixed price of $400,000, with the understanding that the water company should be compensated for all extensions and enlargements made between June 10, 1910, and

the time of the exercise of the option of purchase, less 1 per cent. per annum, the value to be fixed by arbitrators, based upon the difference in the value between the parts of the system as may have been substituted for those as they existed in 1910, the cost of additions and extensions. It must be observed that the price for the plant, or system, was fixed by the contract, and that all that was left open for arbitration was the fixation of the value of the extensions and improvements of the plant and which is merely subsidiary to the main object of the contract. Hence this contract is unlike the one considered in the Montgomery Gas Co. Case, supra, and is quite similar in principle to the one specifically enforced in the case of Jackson v. Jackson, 1 Sm. & Gif. 184. This English case involved a contract for the purchase of the premises and bleach works for a certain price, but the price to be paid for the plant and machinery was to be fixed by arbitrators, and it was contended that the contract could not be specifically enforced, because the valuation of the machinery and plant had not been made. Sir John Stuart, V. C., held this clause was nonessential and granted a specific performance after the price had been ascertained in another manner. The price for the manufactory itself, which was the main thing, had been fixed, and the provision in reference to the machinery was in its nature auxiliary and subsidiary to the main object of the contract.

[2] We therefore hold that, as the contract fixed the price for the plant, or system, the fixation of the value of the improvements and extensions was a mere subsidiary to the main object of the contract, and when the arbitrators did not act, or failed to fix the value, the chancery court should not declare such a failure a fatal defect to the contract, but should, in a suit for specific performance, direct a fair and reasonable value to be ascertained in some manner preliminary to the decree, either by referring the matter to a master or other officer, or by appointing a skilled person as a special valuer, or by determining the amount itself. Pomeroy on Contracts (2d Ed.) § 151, and note.

The case of Caldwell v. Caldwell, 157 Ala. 124, 47 South. 268, in no wise conflicts with the present holding. There the bill was filed to enforce an award of arbitrators, but the proof failed to show that the arbitrators had made an award, and we held that, while the chancery court had the power to enforce an award, it had no jurisdiction or power to carry out agreements to submit matters to arbitration—that is, to compel the submission—just as we in effect hold here that we have no jurisdiction to compel these parties to submit to arbitration the questions agreed to in the contract, but as they have failed to do so, and as the arbitration only involves questions subsidiary to the main object of the contract, the chancery court will ascertain the value which should have been fixed by arbitration and enforce the contract.

[3] Section 1261 of the Code of 1907, as amended by Acts 1911, page 565, expressly authorizes cities and towns to purchase waterworks subject to incumbrances and to assume the payment and performance of same. The assumption by the city of the payment of the face value of the outstanding bonds issued by the water company, not to exceed $425,000, was authorized by this statute, and was in no sense such an issuance of bonds by the city as is forbidden by section 222 of the Constitution of 1901, without first obtaining a majority vote as provided by said section. This was a mere assumption by the city of the payment of a certain amount, an outstanding indebtedness and incumbrance against the property. It had the right to assume the debt and the incumbrance, and the fact that the mortgage secured a debt represented by bonds, instead of notes, is of no importance, and did not convert the transaction into such a bond issue by the city as forbidden by section 222 of the Constitution.

[4] This provision deals only with bonds issued in the usual and ordinary way as then understood—that is, bonds issued, put forth, and circulated by the city as its original obligation—and is no restraint upon the city as to incurring and assuming debts other than by the issuance of its own bonds. Here the bonds have never been issued, put forth, or circulated by the city as its original obligation, so as to bring it within the meaning of the word "issued," as used in section 222 of the Constitution. This statute, or the transaction pursuant thereto, is not repugnant to this constitutional provision. If the debt assumed was excessive, the constitutional restraint, or check, must be found in sections 224, 225, and 226, as the manner of assuming same is not forbidden by section 222, and was expressly authorized by the statute.

The case of Voss v. Waterloo Water Co., 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95, 106 Am. St. Rep. 201, 2 Ann. Cas. 978, has no bearing upon this question, except to set forth a very wholesome rule as to constitutional interpretation. It did not deal with a provision similar to section 222, but with a subterfuge whereby the city attempted to increase its indebtedness beyond the constitutional limit.

[5] It is insisted by the appellee that the bill was prematurely filed, as September 30th was the final date for the consummation of the contract, a point decided against the appellee by the trial court; but, as there is no cross-appeal or assignment of error, the propriety of considering this point may be questionable. But as it may arise again, and affect the vitality of the present suit, we hold that, as per the averments of the bill, it was

not prematurely filed. The contract contemplated that the arbitration would take place and the value of certain auxiliaries to the system would be fixed prior to the 30th of September, 1920, and the averments of the bill show a virtual abandonment of the arbitration by the respondent and its arbitrator, as well as an inability or impossibility to hold same and render an award between the filing of the bill and the 30th of September.

[6] Our attention has been called in brief of appellee's counsel to the well-settled principle of equity that courts of equity will enforce only such agreements as are mutual; that is, in order to give one party a specific performance, the other party must have had a similar right in case of default by the former. The present contract is mutual, and contemplates reciprocal duties, obligations, and rights as to the enforcement of same. True, the city was given an option to purchase, and the water company had no right to compel the exercise of the option; but, after the city had exercised the option, the obligation to perform was mutually binding, and, had the city declined to perform, the water company could maintain a bill similar to this one against the city. Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 76 C. C. A. 516, 8 Ann. Cas. 660, and note.

The trial court erred in sustaining the respondent's demurrer to the bill, and its decree is reversed, and one is here rendered overruling same, and the cause is remanded.

Reversed, rendered, and remanded.

SOMERVILLE, THOMAS, and MILLER, JJ., concur.