### ALABAMA WATER CO. et al. v. CITY OF ANNISTON. (7 Div. 647.)

(Supreme Court of Alabama. Oct. 28, 1926.)

**1. Waters and water courses ⬅183(4).**

Resolution of council, dated February 12, 1920, *held* sufficient expression of city's election to exercise contract option to purchase waterworks on July 1, 1920.

**2. Waters and water courses ⬅183(4).**

Cancellation and retirement of water company's bonds *held* not to cancel city's option to purchase waterworks because price included payment of bonds.

**3. Specific performance ⬅106(4).**

Holders of water company's second mortgage bonds *held* not necessary parties to city's bill for specific performance of company's contract to sell waterworks to city, which agreed to issue its second mortgage bonds to them.

**4. Specific performance ⬅57—City's election to exercise option to purchase waterworks held to make option contract mutual as to remedy.**

City's election to purchase waterworks made option contract with water company mutual as to remedy, so as to require full performance by city as condition of specific performance by company, even if averment of city's ability, readiness, and willingness to perform were not equivalent to averment that it had obtained people's authority by referendum to issue new bonds to company's bondholders as agreed.

Appeal from Circuit Court, Calhoun County; R. B. Carr, Judge.

Bill in equity by the City of Anniston against the Alabama Water Company and the Equitable Trust Company of New York. From a decree overruling a demurrer to the bill, defendants appeal. Affirmed.

Knox, Acker, Sterne & Liles, of Anniston, and Percy, Benners & Burr, of Birmingham, for appellants.

Time is of the essence of an option contract, and complainant must show that it sought to exercise the option at the time provided by the contract. 27 R. C. L. 343;

Elliott on Contracts, § 1551; Thornton v. S. & B. R. Co., 84 Ala. 109, 4 So. 197, 5 Am. St. Rep. 337. The performance of the contract on the part of complainant became impossible prior to the election by the complainant in 1920, and thereafter performance could not be required. Johnson v. Lyon, 75 Mich. 477, 42 N. W. 993; Buchanan v. Layne, 95 Mo. App. 148, 68 S. W. 952; German-American Sec. Co. v. McCulloch (Ky.) 89 S. W. 5; Greil Bros. v. Mabson, 179 Ala. 444, 60 So. 876, 43 L. R. A. (N. S.) 664; 6 R. C. L. 998; Elliott on Contr. § 224; Pomeroy, § 327. To authorize specific performance the contract must be mutual, so that either party might have specific performance. The city could not be required to issue its bonds; so the contract lacks mutuality. Irwin v. Bailey, 72 Ala. 467; Bentley v. Barnes, 171 Ala. 512, 55 So. 130; Tombigbee Valley R. Co. v. Fairford L. Co., 155 Ala. 575, 47 So. 88; Electric Co. v. Mobile, 109 Ala. 195, 19 So. 721, 55 Am. St. Rep. 927; Dimmick v. Stokes, 151 Ala. 150, 43 So. 854; Chadwick v. Chadwick, 121 Ala. 580, 25 So. 631; Iron Age Co. v. Western Union, 83 Ala. 498, 3 So. 449, 3 Am. St. Rep. 758; Warren v. Costello, 109 Mo. 338, 19 S. W. 29, 32 Am. St. Rep. 669; Black Diamond Coal Co. v. Jones Coal Co., 200 Ala. 276, 76 So. 42; Pomeroy, § 162. Effect must be given to every clause and every word in a contract, if it can have any meaning; and the contract may not be altered, save as therein stated. 13 C. J. 527; Elliott on Contr. § 1514; Lee v. Cochran, 157 Ala. 311, 47 So. 581; Byrd v. Hickman, 167 Ala. 351, 52 So. 426; Ill. Sur. Co. v. Donaldson, 202 Ala. 183, 79 So. 667.

James F. Matthews and Merrill, Field & Allen, all of Anniston, for appellee.

That construction will be given the contract which is most equitable to the parties, and which will render performance possible. 13 C. J. 539; Minge v. Green, 176 Ala. 343, 58 So. 381; Smith v. Webb, 176 Ala. 596, 58 So. 913, 40 L. R. A. (N. S.) 1191; Williams v. Glover, 66 Ala. 189. Upon election by the city to exercise its right of purchase, the purchase was to be made necessarily according to the terms of the covenant of sale, and notice of the city's resolution to purchase operated as acceptance of the vendor's offer of sale on the terms and at the time stipulated in the offer. City of Anniston v. Ala. Water Co., 207 Ala. 497, 93 So. 409; Town of Bristol v. Bristol Water Works, 19 R. I. 413, 34 A. 359, 32 L. R. A. 740.

SAYRE, J. June 20, 1910, the city of Anniston and the Anniston Water Supply Company entered into a contract in writing whereby, to state its effect roughly, but

sufficiently for the purposes of this case, the parties agreed that the supply company should furnish water to the city and its inhabitants, and, in connection therewith, should enjoy certain rights and privileges, among others the right to be paid for its services at specified rates. Further, to quote from the contract:

"It is agreed that this contract shall continue for a space or term of twenty (20) years from July 1, 1910, and the city promises to pay for the use of each hydrant which may be furnished by the party of the first part [the Water Supply Company], or its assigns, at the rate aforesaid, payments for each and all hydrants furnished by it to begin thirty (30) days from July 1, 1910."

At that time the plant of the Water Supply Company was incumbered by two mortgages, viz., a first mortgage securing bonds in the sum of $300,000, and a second mortgage in the sum of $100,000, all maturing October 1, 1919.

The contract concluded with a provision in the following language:

"It is further expressly agreed and understood that the party of the second part may purchase the waterworks, including the real estate, water rights, pipe lines, reservoir, etc., of the party of the first part, but not including its accounts receivable and its personal property having no physical connection with the plant, by July 1, 1910, in accordance with the proposition submitted to the city by the party of the first part on the 25th day of May, 1910, on the terms named in said proposition, or in case the city fails to exercise the said right of purchase in accordance with said proposition, it may purchase the same at the end of any 5-year period during the life of this contract, subject only to the following alterations, namely:

"Valuation of the plant shall be four hundred thousand ($400,000) dollars, plus the cost of all extensions of pipe lines, improvements on pumping station and reservoir, and the cost of replacing present equipment with new equipment of greater capacity, such cost to be estimated by the difference between the equipment of the same capacity now in use and the equipment of the larger capacity which may have been installed, and a further increase of twenty thousand ($20,000) dollars, in case the population of the city at the time of the purchase shall have increased as much as 50 per cent. over the census figures of 1910; the price to be diminished, however, by a depreciation of 1 per cent. per annum from this date to the date of exercising the right of purchase."

January 3, 1917, the Anniston Water Supply Company sold and conveyed its plant and property to the Alabama Water Company, and the conveyance shows that the water company took the same subject to existing indebtedness and subject to the right of the city of Anniston to purchase the same under the terms of its contract with the supply company of June 20, 1910, but did not assume "any direct obligation with reference to said bonds," nor did it assume or agree to pay the same, but simply, as the conveyance recites, purchased the property "subject to said indebtedness with the right to pay said bonds and retire the same if it deem it proper to do so." The consideration of this conveyance is recited as "the payment by the Alabama Water Company of the entire bonded indebtedness of the Anniston Water Supply Company, or the cancellation and retirement of its bonds," and on February 1, 1917, the water company—so to speak of the Alabama Water Company—to secure an issue of bonds, executed and delivered to the defendant Equitable Trust Company of New York a deed of trust conveying, among other properties, the plant in controversy, but recognizing the right of the city to purchase, and providing for the contingency of its exercise. However, we infer from the record that by these conveyances the bonded indebtedness of $400,000, to which the agreement between the city and the supply company referred, was canceled and the bonds retired by the conveyance to the trust company.

Further, the bill avers that on February 12, 1920, the city council of the city of Anniston adopted a resolution as follows:

"The city council hereby resolves to exercise the option given to the city of Anniston under the contract between the Anniston Water Supply Company and the city of Anniston, made and entered into on the 20th day of June, 1910, to purchase the waterworks and all property, real, personal and mixed, mentioned in said contract, and the mayor of said city is requested to notify the Alabama Water Company, the present owner of said property, of this resolution, and to do all things necessary to acquire said property mentioned in said contract."

And thereupon the city demanded of the defendant Alabama Water Company that it perform its contract to convey the water plant, but the company has failed and refused to perform the same, contending that it was not bound thereby.

Paragraph B of the amended bill avers that it is necessary to file the bill in order to have determined the amount to be paid under the contract of June 20, 1910, and that the city has at all times been ready, able, and willing to do and perform the agreement on its part. The prayer is for the specific performance of the contract alleged.

To the bill in its final form defendants demurred, and their demurrer was overruled. Hence this appeal.

[1] Starting with the premise that time is of the essence of option contracts (27 R. C. L. 343), and referring to that clause of the contract in question which provides that the city might purchase by July 1, 1910, or at the end of any 5-year period during the life of the contract, appellants deduce the proposition that the option to purchase might have been exercised on—to speak of the option date next after the passage of the resolution by the city council—July 1, 1920, and that the

resolution, dated February 12, 1920, was of no consequence as an exercise of the option because not adopted on July 1, 1920.

It is conceded in the brief that on February 12th the city might have sufficiently expressed its election to purchase on July 1st, next thereafter, or on any other subsequent option date during the life of the contract. We see no necessity for an extended argument of the proposition. Any reasonable interpretation of the resolution in connection with the contract, to which in terms it refers, informed appellants that on July 1st, next thereafter, the city would exercise its option, and gave appellants, or appellant water company, notice that in the meantime the water company might prepare for a consummation in that respect of the contract between the parties.

[2] In the next place it is contended that, since the purchase price, in case of an election to purchase, was made payable only by the assumption of the supply company's first mortgage bonds, $300,000, and an exchange of bonds of the city to the amount of $100,000 for the second mortgage bonds, all maturing October 1, 1919, the cancellation and retirement of the bonds effected by the sale to appellant water company and the mortgage deed of trust to the trust company worked a cancellation of the option contract and left the city shorn of its right to purchase. In this connection let it be noted that those parts of the contract heretofore set out provide that the city may purchase "subject only to the following alterations, namely," and then follows the provision as to the valuation of the plant, viz., $400,000 plus the costs of improvements and replacements and $20,000 if in the meantime the population of the city shall have increased as much as 50 per cent. over the census of 1910, less, however, 1 per cent. per annum from the date of the contract to the date of exercising the right to purchase. The argument in brief is that, since the city agreed to purchase by assuming the outstanding issue of $300,000 of bonds, the continued existence of those bonds was essential to the performance of the contract, and since the intervening retirement of those bonds has rendered performance according to the terms of the contract impossible, equity will not now decree specific performance in any sort.

The bonds to which the contract referred were payable in 1919. It must be assumed that the parties had in mind the time and contingency of their payment when due. And yet they contracted for an option which would extend to July 1, 1930, so that an appropriate decree must at this time allow the option to be exercised by payment in money or must destroy its chief value, probably, so far as the city is concerned.

Appellant lays stress upon that stipulation of the contract providing for a purchase in accordance with the proposition submitted to the city by the supply company on the 25th day of May, 1910, "subject only to the following alterations." But the "following alterations" effected no change in the amount or method of paying for the plant at a present valuation of $400,000, but only provided for the water company's compensation for future improvements and replacements and for a further increase in the purchase price of $20,000 in the event of a certain increase in population, less 1 per cent. per annum for depreciation, so that the stipulation for payment of $400,000 by bonds was not in anywise changed. In other words, the problem of interpretation is just what it would have been had the clause respecting alterations not been incorporated in the contract. We are aware of the equitable rule which would not impose a doubtful interpretation upon the defendant in an action for specific performance. But, the circumstances considered in their entirety, our judgment is that the contract shown in appellee's bill, fairly and reasonably construed, intended that, if the supply company's issue of $300,000 of bonds should be paid at their due date, or, for that matter, at any other time within the stipulated life of the option, during which the supply company or its successor in right and title would enjoy all the benefits of the contract, the city's correlated right to a conveyance would survive, compensation at the agreed valuation (less $100,000 of the city's bonds) to be paid in money, in the circumstances shown by the bill, to the trust company for the use of the cestuis que trust named in their deed or the defendant water company as their interests might appear—this, because the water company assumed in substance to preserve, and the trust company took its title subject to, the right of the city under the contract. Under that contract the city may be required to pay more, or possibly less, than the $300,000, and this furnishes another reason why it should not be held that the parties agreed upon the assumption of that amount of bonds as the exclusive method of compensation. Minge v. Green, 176 Ala. 343, 58 So. 381.

[3, 4] Appellants' further contention is that the contract is lacking in mutuality, by which appellants mean mutuality of remedy. Under this head appellants refer, in rather a casual way, to the fact that the second mortgage bondholders, to whom the city in executing its contract is to issue $100,000 of its bonds to be secured by a second mortgage upon the water company's plant, are not made parties to the bill. A sufficient answer to this suggestion is to be found in the fact that the second mortgagees are not necessary parties to the bill, and that the exercise of the option proposed thereby could in no way adversely affect their rights, the proposed foreclosure of the option offering to them a second mortgage of equal dignity with the second mortgage (if still outstanding) held by

them at the time of the contract plus the city's guaranty of payment. On the other hand, if the original second mortgage debt has been paid, then the rights of the second mortgagees, which are recognized by appellee's bill, may be disposed of on principles stated as applying in the case of the first mortgage. The real objection under this head seems to rest upon the proposition that the city has no authority to issue bonds without a referendum, the result of which is not ascertainable in advance. The bill averred that the city has at all times been able, ready, and willing to perform the contract on its part. If it be assumed that this is not the equivalent of an averment that the city—so to speak of its official government—has already obtained the authority of the people for the bond issue in question, still, the city having elected to exercise its option, as shown by the bill, the contract was thereby made mutual as to remedy, and the court will require full performance on its part as a condition of relief by way of specific performance. Blackburn v. McLaughlin, 202 Ala. 434, 80 So. 818.

The decree is affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.