(135 So. 585)

ALABAMA WATER CO. et al. v. CITY OF ANNISTON.

7 Div. 929.

Supreme Court of Alabama.
Oct. 9, 1930.

Rehearing Denied March 19, 1931.
As Modified on Further Denial of Rehearing June 27, 1931.

358

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, and Knox, Acker, Sterne & Liles, of Anniston, for appellants.

James F. Matthews, of Anniston, for appellee.

## BOULDIN, J.

The original bill in this cause was filed August 28, 1920, by the city of Anniston against Alabama Water Company and its mortgagees, for the specific performance of a contract or option to purchase the waterworks system serving the city.

The equity of the bill was upheld on appeal from decree on demurrer. City of Anniston v. Alabama Water Co., 207 Ala. 497, 93 So. 409.

The original bill based its claim to relief on an original option executed June 20, 1910, by Anniston Water Supply Company, predecessor in title of Alabama Water Company, as supplemented by a contract direct with Alabama Water Company of date June 3, 1920.

A plea of non est factum being interposed as to this supplemental contract, the bill was amended by striking it out and proceeding on the original contract and a resolution exercising the city's option to purchase as of July 1, 1920. The equity of the bill as thus amended was again sustained on appeal from decree on demurrer. Alabama Water Co. v. City of Anniston, 215 Ala. 120, 110 So. 36.

Alabama Water Service Company, having succeeded Alabama Water Company pending the suit and subject to the equities of complainant, was made party respondent, together with Central Union Trust Company, its mortgagee.

A third appeal sought to be taken by these new respondents from decree on demurrer was dismissed under Code, § 6080. Alabama Water Service Co. v. City of Anniston, 217 Ala. 271, 116 So. 124.

The present appeal is from final decree adjudicating complainant's right to relief, and ordering a reference to ascertain the amount due to be paid.

On December 13, 1928, after proof taken, respondent Alabama Water Service Company filed an amended answer to the bill as amended, withdrawing all former answers and pleas.

Other respondents, Alabama Water Company and Central Union Trust Company of New, York, present mortgagee, on same date likewise withdrew all former answers and pleas, and adopted said answer of Alabama Water Service Company.

This amended answer, among other things, reasserted averments which brought again into the case the supplemental agreement of June 3, 1920, alleged it was duly executed or-ratified by both parties, the city and Alabama Water Company, and arbitrators appointed by them, who were proceeding to arbitrate the matters submitted to them when the original bill was filled. The proof sustains this phase of the answer.

The bill was never amended so as to again present complainant's right to relief under the original option as supplemented or modified by said contract of 1920.

Appellee insists that respondents, by interposing a sworn plea of non est factum in the early stages of the litigation, a matter peculiarly within respondents' knowledge, thus leading to the amendment resting complainant's case upon the original option, are now estopped to shift position and insist complainant's equities are to be determined by the supplemented or modified agreement of 1920.

The principle is recognized that a party who has in one judicial proceeding successfully maintained one position, or otherwise obtained an advantage, is estopped to assume a different and incompatible position in a later proceeding to the hurt of his adversary. McQuagge v. Thrower, 214 Ala. 582, 108 So. 450; Harrison v. Harrison, 200 Ala. 379, 76 So. 295.

The rule has been applied in the same suit, as where a party has introduced evidence supporting his version of the case, and upon such theory successfully objected to evidence of his adversary, and later in the trial sought to assume an inconsistent position. Hodges v. Winston, 95 Ala. 514, 11 So. 200, 36 Am. St. Rep. 241. See, also, Wheeler v. Armstrong, 164 Ala. 442, 51 So. 268.

■ This rule, however, cannot be made to defeat our statutes touching amendments in judicial proceedings. Amendments to bill or answer at any time before final decree is matter of right. Code, § 6558. This is subject to the rule that, if he has maintained one position, he cannot assert another.

■■ Such amendments may be made to meet any state of the evidence. Giving full effect to the, statute, we have held a party may withdraw one defense and present another inconsistent therewith. The statute makes provision against any advantage being thus obtained. Respondent first set up this new line of defense before proof taken. But, without regard to date of such pleading or proof, complainant was free after the facts were disclosed to amend the bill to present the case as in the original bill, whose equities were sustained on first appeal to this court. Burrow v. Berry, 211 Ala. 78, 99 So. 732; Id., 213 Ala. 317, 104 So. 786; Ex parte Ashurst, 100 Ala. 573, 13 So. 542.

■ We must hold respondents entitled to file the amended answer and to prove its averments; and, proof of the due execution or ratification of the supplemental agreement of 1920 being made, relief should be molded accordingly.

The final decree rendered upon the original option only must therefore be reversed. The cause will be remanded with leave to so amend the bill.

In dealing with defenses going to the right to relief upon the bill as so amended, reference must be made to the contract of June 3, 1920, which will appear in the report of the case, as related to the original option agreement of June 20, 1910, which is clearly set forth in the opinion on second appeal. 215 Ala. 120, 110 So. 36.

By first paragraph of the contract of 1920 it is declared that the "City of Anniston hereby elects to exercise the option" to purchase given by the contract of 1910. Not only is the right to exercise the option declared, but by agreement of both parties the city does exercise such option.

The property purchased is then described, the entire plant as it was in 1920, whether located within the city or adjacent thereto.

■ The power of the city to purchase, own, and operate waterworks serving customers within and without the city limits was ample at the date of this contract; and the Public Service Commission had expressly recognized the right of the city under its option to purchase.

No question of ultra vires in the original transaction of 1910 need be considered.

Paragraph 3, contract of 1920, stipulates the price to be paid. The base price of $400,000 is retained as in the original contract.

■ True, the word "minimum" is inserted, apparently to safeguard the water company as against certain stipulations in its trust deed of 1917 to Equitable Trust Company. Such "minimum" should not be construed to unsettle the base price on the original plant.

■ The added cost for extensions, replacements, and betterments is provided for in substantially the same language as in the original option, as also the stipulation for credit of 1 per cent. per annum for depreciation. This manifestly means 1 per cent. on the base price for depreciation of the plant as a unit, calling for no ascertainment of what portions of the property may have depreciated more or less than 1 per cent. Likewise depreciation of

1 per cent. on the plant from year to year includes cost of extensions, replacements, and betterments ascertained as per contract.

One per cent. off the value of the entire plant as of July 1, 1911, and each year thereafter, is the equitable construction of this provision according to its intent.

■ We find nothing so indefinite and uncertain on the face of the contract nor in the light of subsequent events to render specific performance impractical.

■ Whether in any case a change of economic conditions, such as decrease of the purchasing power of the dollar, may render specific performance inequitable, we need not decide. In giving an option to purchase at a flat base price to be exercised at the end of any five-year period within twenty years, the parties are presumed to anticipate such changes, and fix prices accordingly.

Moreover, it appears the violent decline in the value of the dollar complained of had already occurred, and was well known when the contract of 1920 was executed.

■ We find nothing inequitable in the specific performance of this contract, either inhering therein or arising from subsequent events. Further discussion on this line is deemed unnecessary.

■■ In the amended answer respondents allege that the arbitration provided for the appraisal of betterments, etc., had not failed nor been abandoned when the suit was filed; that the arbitrators were then proceeding to perform the duties for which they were chosen; that the bill was prematurely filed during the pendency of such arbitration and more than a month before the date fixed in the agreement for a deed to be executed.

It is here insisted these averments were proven and constitute a full defense to the suit. It does appear the arbitrators had not abandoned their proceedings, were about entering into a conference, when the bill was filed. It further appears, however, that sharp differences were developing touching the selection of an umpire.

In view of the position of the parties touching the person to be selected as umpire, it is probable one would not have been agreed upon; and in no event does it appear that the arbitrators would or could have made an award within the time stipulated.

The original bill averred the arbitration had been virtually abandoned by respondent, and that it would be impractical to complete the arbitration by the date fixed.

Having held that the arbitration provision did not stand in the way of specific performance, this court on first appeal held that, under the averments of the bill, it was not prematurely filed.

With this announcement of this court before respondent, a plea of non est factum was interposed, leading to an amendment of the bill and long litigation to test the equity for specific performance under the original contract of 1910.

The plea of non est factum verified by the president and authoritative spokesman for respondents, and filed in the cause, was an express denial of the very existence of an arbitration. While eliminated long thereafter as pleading, it stands as evidence of the attitude of respondents toward the arbitration. 2 Wigmore, § 1067; Mims v. Jones, 135 Ga. 541, 69 S. E. 824; Kunglig v. Dexter & Carpenter (C. C. A.) 32 F.(2d) 195.

It is a well-settled rule that the admissions or declarations made in pleading by a party to a cause may be used as evidence by the opposing party in the same suit. Langley v. Andrews, 142 Ala. 665, 38 So. 238; 22 O. J. p. 332.

Assuming, as of course, the plea of non est factum denying the very existence of any valid and binding arbitration proceeding, was filed in good faith, it is wholly inconsistent with any objection to abandonment of the arbitration. In view of the first announcement of this court, it was an abandonment of any insistence that the suit was prematurely filed, a matter which could have been speedily remedied by complainant at that time. Having litigated the case to final decree through many years and repeated appeals, the principles of waiver or estoppel in such case should and will be applied. 5 C. J. 46. The right of amendment under our statute as above declared was not intended to wipe out the rule of waiver or estoppel, but is in aid of justice on the merits of the case.

We hold that complainant should not be denied relief or put to a new suit on the ground that the present suit was prematurely filed.

■ The averment that the city was ready, able, and willing to perform is not negatived by the fact that it did not have the cash nor other means than a bond issue to pay the price in excess of the bonds assumed in the contract of 1920, and the qualified voters had not authorized a bond issue, a condition precedent to their lawful issuance.

By the terms of the contract it was contemplated that a bond issue might be necessary; it stipulated that the seller would take such bonds in lieu of money, if need be.

Readiness and willingness under the terms of such a contract means readiness and willingness of the governing authorities of the city, and ability includes the lawful power to issue such bonds, and to sell them under conditions later obtaining, when and if duly authorized by the electorate.

■ The parties were charged by law with knowledge of the conditions upon which bonds

could be issued. They are presumed to have contracted in the light of these conditions.

■■ An accounting is the first step to obtain knowledge of the amount to be issued and to advise the electorate of the subject-matter upon which they should speak in an election. We hold such procedure was contemplated by the parties as a part of the contract, and such contract may be specifically enforced, as others.

A decree first ascertaining the amount payable, followed by a decree fixing a reasonable time for compliance, which should include a sufficient time for holding an election and marketing the bonds, if approved, with a provision finally foreclosing complainant, on failure to comply, is the natural procedure in contemplation of the parties. This is the effect of our decisions on former appeals, supra.

■■ The accounting should include extensions, replacements, and betterments on the plant as a unit down to the date of the final decree. We are dealing with property devoted to a public service. While operated by respondents, it was and is under the supervision of the Public Service Commission, subject to the option rights of the city. No interruption of service was contemplated, no cutting off of any customers entitled to such public service, no junking of any part of the plant required for such service. It is contemplated the city shall step into the shoes of the water company as owner and as a public service agency.

Enlargement to meet the water service requirements of a growing city has been a clear duty of the water company during the ten years this litigation has been pending. It appears the city has been itself a party to some of these enlargements, such as better and more extended fire protection, etc.

■ Respondents are not to be dealt with as trustees ex maleficio from and after July 1, 1920, nor after September 30, 1920.

As heretofore mentioned, an accounting was called for by the terms of the contract before the city could know what purchase price was to be paid. The city was a party to the abandonment of the arbitration, and chose an accounting in equity, which is yet pending. At no time to this date has the city been in position to make tender and demand a deed with right of possession.

The contract, as heretofore noted, recognized the right of the city to make part payment in bonds, if the deal had been closed at the first date named, which means on approval of the qualified electors, which might never be given.

Since the retirement of the bonds which, by the contract, the city was to assume, it seems admitted that the purchase price can be paid only with the aid of a bond issue. Not until 1926 was such issue approved by the electors. Whether this is adequate is not yet known. During all this time respondents have been under legal duty to retain possession and render the public service to which the property has been devoted.

It follows this is not a case in which the respondents are due to account for income and profits, and complainant relieved of all interest on the purchase price.

Such a decree in effect gives the purchaser the use of both the purchase price and the property itself pending specific performance.

In the recent case of Pearce v. Third Avenue Improvement Co., 221 Ala. 209, 128 So. 396, we had occasion to consider the question of interest on purchase price and rents or profits from continued possession and use during protracted litigation for specific performance. Without repetition we apply the rules there recognized as controlling here.

■ Respondents, who have long resisted the right to specific performance, thereby causing delay in decreeing complainant the relief to which it is found entitled, cannot be permitted to profit by such delay; this without regard to any question of good faith in the litigation. The fact that the complainant has been denied the profits which the decree for relief determines were its due is the controlling factor. It follows that an accounting for profits should be had. The accounting should date from the filing of the plea of non est factum. If found to exceed the interest on the purchase price including cost of betterments as per contract, the city should be given the benefit of same in the final decree.

■ We will not go into further detail. In framing the decree, the great principle, "equality is equity," should be kept in mind.

No inequality results from enhanced market value of the plant, if any, at the time. By the original as well as supplemental contract the city was to get the benefit of such advancement.

■ We find nothing in the relief herein indicated violative of the Fourteenth Amendment of the Federal Constitution.

The final decree rendered is in several respects not in harmony with this opinion. The decree is reversed, and cause remanded for further proceedings in accordance herewith.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

### On Rehearing.

Opinion modified and application for rehearing overruled.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.

363

BROWN, J., limits his concurrence to views expressed in separate opinion.

GARDNER and FOSTER, JJ., dissent.

Justices GARDNER and FOSTER concur in the result, but are not in accord upon the questions of accounting and estoppel treated in the opinion. They are of the opinion that as the defendant is shown by the proof to have not been in default, but in fact proceeding with the arbitration when the bill was filed, it could not be held accountable for rents and profits. National Waterworks Co. v. Kansas City (C. C. A.) 62 F. 853, 864, 27 L. R. A. 827; 3 Williston on Contracts, § 1421; 36 Cyc. 578b.

They further think that no estoppel or waiver is shown, as contemporaneously with the plea of non est factum, and in the same document, defendant in detail pleaded the arbitration agreement, the pendency of the negotiations, and complainant's unwarranted repudiation thereof by filing the bill; all of which alternative pleading is recognized by statute and decision. Section 6547, Code; Ex parte Dunlap, 209 Ala. 453, 96 So. 441.

BROWN, J. (concurring).

My judgment is that the decree of the circuit court, in so far as it granted relief on the basis of the original contract of 1910, was correct, but that appellants should have been required to account on equitable principles, not as trustees ex maleficio, and that the contract should be construed as embracing the entire system as within the contemplation of the parties, and that the decree of the court should be so modified as to protect the interests of both parties.