[Howison v. Bartlett, *et al.*]

# Howison *v.* Bartlett, *et al.*

*Bill for Specific Performance of Contract.*

(Decided April 28, 1906.  40 So. Rep. 557.)

1. *Vendor and Purchaser; Contract; Description of Land; Parol Evidence.*—Where the contract for the sale of timber and lands described it as the "virgin growth, long leaf, yellow pine timber land and rights owned by party of first part," in a given township and range, etc., edge of C. River, such description is sufficient upon which to admit parol testimony of the definite location of the timber and lands so described.

2. *Specific Performance; Description; Sufficiency.*—Where the description is such as to be capable of identification of the subject matter of the contract by parol testimony, such contract will be specifically enforced.

3. *Same; Complete Contract; Defenses.*—The option for sale of timber and lands contained the provision that, upon its ripening into a sale, the sale should be consummated on the same terms as those contained in a contract of sale of certain other lands, specifically referred to in the option. The said contract of sale provided a specific price per acre; that a survey should be made by a competent surveyor to be mutually agreed upon by both parties to the contract and the lands mapped and platted and the line sufficiently marked so as to distinguish the outside boundaries of the land. Held, that the provision of the contract that a surveyor be mutually agreed upon by the parties so that the lands might be surveyed and mapped and platted was not an essential element of the contract, but a mere incident, for the purpose of identifying the subject matter and determining the amount due under the contract; and a failure on the part of the parties to the contract to mutually agree upon a surveyor to do this work will not defeat a specific performance of the contract.

APPEAL from Bibb Chancery Court.

Heard before HON. THOMAS H. SMITH.

Bill for specific performance of contract filed by appellees against appellant, the facts of which sufficiently appear in the opinion of the court.

[Howison v. Bartlett, *et al.*]

PETTUS, JEFFRIES & PARTRIDGE, for appellant.—We insist first, that a contract, not complete in anything essential, or uncertain in anything essential, if it involve an interest in land (other than a lease for a year or less) is void under the statutes of fraud on objection taken.— *Alabama Mineral Land Company v. Jackson,* 121 Ala. 172; *South Ry. Co. v. Wythe,* 5 Degex M. & G. 880; *Street v. Ridley,* 6 Vez. 818; *Milnes v. Jerry,* 14 Vez. Jr. 400; *Cooper v. Hood,* 26 Bevan 293; *Bromley v. Jeffries,* 2 Vernon 415; *Nelson's Case, supra,* 96 Ala. 515; *Alba v. Strong,* 94 Ala. 163.

Second, that a contract, (whether or not subject to the statute of frauds) incomplete in any material part, cannot be specifically performed by decree of a court of equity.—Authorities supra.

The courts of equity cannot make a new contract for the parties and then decree a specific performance.—Authorities supra.

ELLISON & THOMPSON, for appellee.—The contract in question falls within the class in which the mode for ascertaining the price mentioned, but from the language of the stipulation it is regarded as a non essential, and is something by way of suggestion so that the agreement is really to sell for a fair price.—*Jackson v. Jackson,* 1st S. & G. 184; *Gregory v. Mighill,* 17 Ves. Jr. 328; *Smith v. Peters,* 20 Eq. Cases 511; *Coles v. Peck,* 96 Ind. 331; Pomeroy on Specific Performances, p. 213. General descriptions of land does not render the deed indefinite.— *Bass v. Gilliland,* 5 Ala. 765; *Chambers v. Ringstaff,* 69 Ala. 140; *DeJarnette v. McDaniel,* 93 Ala. 215. Such indefiniteness may be cured by parol evidence.—*Webb v. Eleyton Land Co.,* 105 Ala. 478, and cases there cited.

DENSON, J.—This is the second appeal by Allen P. Howison from a decree of the chancery court of Bibb county overruling a demurrer to a bill filed against him by Arthur S. Bartlett and others to have a contract for the sale of lands and timber rights specifically performed. The decree of the chancellor was affirmed on the former

appeal. When the case returned to the chancery court, the complainants amended the bill, and the demurrer to the bill as amended was renewed. Notwithstanding the amendment, the questions presented by the present record for determination by this court are precisely those that were determined on the former appeal. So that, unless the court recedes from the views held and conclusions announced on that appeal, an affirmance of the decree of the chancellor must follow.—*Howison v. Bartlett,* 141 Ala. 593, 37 South. 590.

The contract of which specific performance is sought exists by virtue of an option to purchase lands given by respondent and an acceptance thereof by complainants Bartlett, Robertson, and Ensign, whose property rights thereby acquired have been assigned to the complainant corporation. The entire contract is made an exhibit to the bill and is contained in three papers of different dates. The bill states that on the 30th day of May, 1901, complainants made a contract to buy from Howison other and differents lands, and did afterwards buy as agreed. The contract here sued on, called an "option," is a part of the first contract, and is as follows: "Said first party, in consideration of the premises, hereby gives to second party an option to purchase two other tracts of timber land and timber rights or either of said parcels; one known as the 'Active Tract,' consisting of about three thousand acres, more or less, in the vicinity of Active, Bibb county, Alabama, and the other known as the 'Trio Tract,'' consisting of about five thousand acres, situated near Trio, in said county and state, and constituting all the virgin growth, long leaf, yellow pine timber lands and rights owned by the first party in T. 22, R. 11—10—9 east Cahaba river, at the price of six dollars per acre, and said option to be exercised within ninety days from date. If the option is accepted, then purchase to be consummated on the same terms and conditions as herein above mentioned, except as to price per acre. This option relates only to virgin growth, long leaf, yellow pine timber lands and timber rights which have not been cut over or denuded." The terms and conditions (except

[Howison v. Bartlett, *et al.*]

that we substitute $6 per acre for 5.55 per acre) are as follows: "Second parties hereby agree to and do purchase said lands and timber rights and agree to pay therefor as follows: Six dollars per acre, which said sum said second parties are to pay as follows: Fifteen thousand dollars ($15,000.00) cash on execution of this agreement, balance within thirty days after completion and delivery of surveys and abstracts of title as hereinafter provided. Said first party agrees to furnish at his own expense said second parties full abstracts of title to all said real estate and timber rights, showing good, marketable title thereto. Said premises to be at once surveyed by some competent surveyor to be mutually agreed on by the parties hereto, and said real estate and timber right mapped and plotted and the lines and corners sufficiently marked to designate the outside boundaries of said land, and the number of acres of land and the timber rights, computed, and the expense thereof shall be borne by the parties hereto equally." On July 18, 1901, the respondent executed a written agreement in these words: "For value received I hereby extend the written option on the Active and Trio properties for the period of sixty days from August 30, 1901." On October 25, 1901, respondent, together with complainants Bartlett, Robertson, and Ensign, signed a writing as follows: "Option as to Active and Trio tracts accepted October 25th, 1901. Abstracts of title and survey and map to be furnished within thirty days from date, and deeds to be delivered and purchase price paid within ten days thereafter."

As was stated in the opinion on the former appeal: "To defeat the bill the respondent urges only those grounds of the demurrer which are interposed upon the assumption that the contract is incomplete for want of survey by a surveyor agreed on by the parties, and that the contract is fatally uncertain as to the property intended to be transferred." It is an elementary principle in equity jurisprudence that specific performance will not be decreed of an agreement for sale, unless the property to be conveyed is fixed with certainty as to the locality and description of the land. This principle is

equally applicable with respect of the price to be paid.— Waterman on Specific Performance of Contracts, §§ 154, 147; *Cox v. Cox*, 59 Ala. 592. The reason for this principle is obvious, and was stated by Judge Story in this language: "For a court of equity ought not to act upon conjecture; and one of the most important objects of the statute of frauds was to prevent the introduction of loose and indeterminable proofs of what ought to be established by solemn, written contracts."—1 Story's Eq. § 764. While the foregoing is true, yet it is equally true that it is not indispensable that the land should be so accurately described as to leave no doubt as to what is meant; evidence dehors the contract being admissible to explain ambiguous terms, under the maxim, "That is certain which may be made certain." This principle was recognized in the opinion of the court on the former appeal in this case in this language: "Neither the statute of frauds nor any principle governing specific performance requires such definite description of the land as to preclude the necessity for a resort to extrinsic evidence, such as will render the given description certain."—Waterman on Specific Performance, § 144; *Bass v. Gilliland's Heirs*, 5 Ala. 761; *Meyer v. Mitchell*, 75 Ala. 475; *Angel v. Simpson*, 85 Ala. 53, 3 South. 758; *Driggers v. Cassady*, 71 Ala. 529; *Howison v. Bartlett*, 141 Ala. 593, 37 South. 590; *Homan v. Stewart*, 103 Ala. 644, 16 South. 35. Under the doctrine last asserted there can be no doubt that, while the contract does not indicate with certainty, the quantity or precise location of what is therein described as the "virgin growth, long leaf, yellow pine timber lands and timber rights which have not been cut over or denuded," owned by the defendant in the given territory, yet it may be, and according to the averments of the bill it is, true that the description given in the contract is sufficient to admit parol proof to identify the lands and this could be done by survey.

But the clause with respect to the survey marks the point of cleavage between the parties. It is the point of difficulty in the case. On the former appeal this clause was disposed of by the court in the following language:

[Howison v. Bartlett, *et al.*]

"By our construction of the stipulation of a survey of the land, it was not intended to make the selection of a surveyor, or the act of surveying, essential to the completion of the sale. Such survey was provided for only as an incident of the sale and for the purpose of measuring and marking out the property constituting the subject-matter of the contract." The argument of counsel for appellant in opposition to this view is based upon that line of cases in which it has been held that where the price of property, the subject of the sale contract, is to be fixed by arbitrators selected by the parties, the contract is incomplete and incapable of specific performance until the price is fixed in the mode provided. Of the cases referred to, that of *Milnes v. Gery,* 14 Ves. Jr. 399, is regarded as the leading one. The substance of the agreement there was that an estate might be purchased at a price to be fixed by two arbitrators selected by the parties, and if the arbitrators could not agree they should select a third person, whose determination therein should be final. The arbitrators could not agree on the price, nor were they able to agree on a third person who should make a final determination. The plaintiff in the case filed a bill to have the agreement carried into executionn, praying that a proper person or persons might be appointed by the court to make valuation of the property, or that the valuation should be ascertained in such manner as the court should direct. The defendant relied upon the incomplete state of the agreement. Sir William Grant, speaking for the High Court of Chancery, there held that, the price being of the essence of a contract of sale and the parties having agreed upon a particular mode of ascertaining the price. for the court to declare that one should take and the other should give a price fixed in any other manner would not execute the agreement of the parties, but would be making an agreement for them, and execution of the contract was denied.

The same doctrine has been followed in this country. —*Norfleet v. Southall,* Murp. 189; *Woodruff v. Woodruff,* 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380. "This case has been approved and its doctrine followed in many

subsequent ones, nor has it ever been repudiated; but the court in the most recent English decisions has. declared that its doctrine should not be extended, but should be restricted in its application to the exact facts,"—Mr. Pomeroy says there is a second class of contracts, "which embraces those in which a mode for ascertaining the price is mentioned, but from the language of the stipulation it is regarded as nonessential, and as something by way of suggestion, so that the agreement itself is virtually one to sell for a fair price. The tendency of the later English decisions is to consider these stipulations for a determination of the price by third persons rather as matter of form than of substance, and to construe them in such manner that they become incidental to the main object of the agreement. The court will always look at the substance of the agreement, and disregard the mere forms which have been provided for effecting it, and which cannot be made operative."'—Pomeroy on Contracts, §§ 150, 151. "The result is that, while the case of *Milnes v. Gery* and the class of cases to which it belongs has not been repudiated, it is carefully restricted to the kind of contracts already mentioned. The court will treat the contract as falling within the second class, unless it would thereby do violence to the language and thwart the intent of the parties."—Pomeroy on Contracts, supra; *Grosvenor v. Flint*, 20 R. I. 21, 37 Atl. 304; *Town of Bristol v. Bristol & W. Waterworks*, 19 R. I. 413, 34 Atl. 359, 32 L. R. A. 740.

The sense of these cases is that, where the contract specifies a mode of ascertaining the price which is essential, the contract is conditional until the ascertainment, and is absolute only when the price has been determined. If there be default in this respect the contract remains imperfect, and incapable of being enforced.—Fry on Specific Per. 163. In this case the contract fixes the price to be paid for the lands and timber rights at six dollars per acre. So it cannot be reasonably said that the price is left open. The most that can be claimed by appellant with respect to this feature of the contract is that the total sum to be paid is dependent upon the number of acres.

[Anderson, *et al.* v. Buckley, *et al.*]

.We have seen that the property is so described that it may be definitely located by parol proof, and that this character of proof is admissible. The only office left, then, to the surveyor to perform, would be to run out the lands and ascertain the number of acres. So with the price per acre given ,and the property capable of being definitely located, we cannot, after construing the contract as a whole, think that it was the intention of the parties that the selection of a surveyor should be an essenial to its completion.

We have not overlooked the case of *Alabama Mineral Land Co. v. Jackson*, 121 Ala. 172, 25 South. 709, 77 Am. St. Rep. 46, so strongly relied on by the appellant. We are of the opinion that the facts of the case at bar distinguish it from that case. The conclusion is that we will adhere to the decision made in the case on the former appeal, and the decree of the chancellor must be affirmed.

Affirmed.

WEAKLEY, C. J., and HARALSON and DOWDELL, JJ., concur.