# Caldwell *v.* Caldwell, *et al.*

*Bill for Specific Performance of an Award.*

(Decided April 16, 1908. Rehearing denied July 3, 1908.
47 South. 268.)

1. *Specific Performance; Arbitration and Award.*—Chancery can enforce an award of arbitrators appointed by the parties, but it cannot carry out or enforce agreements to submit matters in controversy to arbitration.

2. *Mortgages; Redemption.*—If a sale to one of several heirs was a redemption by him for the benefit of all the heirs, although under a guise of purchase, upon the other heirs contributing their pro rata

towards the payment of the mortgage, their right of redemption would not be cut off until the foreclosure of the outstanding mortgage given by the purchasing heir, and this could not take place until the law daw of the mortgage, after which the other heirs have the statutory right of redemption within two years after the foreclosure; if the purchasing heir acts in behalf of the other heirs and his transaction with the mortgagee was in the nature of a renewal or extension of existing encumbrances, one of the other heirs cannot redeem his share in the land by paying his pro rata part of the outstanding mortgages, since he cannot be benefited by paying the amount due by him to the purchasing heir and getting a conveyance subject to a subsisting charge on the land, and the mortgagee cannot be required to accept any part of the whole of his claim until its maturity. (The bona fides of the encumbrance not being questioned and the debt not being due.)

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by E. H. Caldwell against D. K. Caldwell and others. From decree dismissing the bill, complainant appeals. Affirmed.

The history of the case may be briefly stated as follows: Appellant did business in his father's name, one Hamlin Caldwell, and became involved in the amount of more than $27,000. Before his death Hamlin Caldwell paid off all this indebtedness but $16,000, and gave a mortgage covering his landed estate to pay this balance. After Hamlin Caldwell's death, D. K. Caldwell became administrator of his estate, and in order to make a settlement of his administration the heirs entered into the following agreement: "This agreement, made and entered into by and between D. K. Caldwell, S. Almena Caldwell, G. B. Caldwell, and E. H. Caldwell, witnesseth that we hereby make the following agreement with each other: (1) That D. K. Caldwell shall make a final settlement of the administration of the estate of H. Caldwell, deceased, taking no account of the lands formerly belonging to the said estate, nor the rents due from said land, except for the years 1895 and 1896, and likewise taking no accounts of the debts which are charged upon said lands covered by the Butler Mortgage. (2) Said

D. K. Caldwell shall account for the rents for the years 1895 and 1896, and charge each heir with the amount of rents received by him as so much advanced and paid to the heirs so receiving said portion or rent, crediting himself with the amount disbursed by him, if anything, out of his individual means or money received from said estate otherwise than above excepted as the proceeds of the land, and that he shall likewise charge each heir on their settlement any advancement by Caldwell to said heir, but no debt that may be due from any one of said heirs of the estate of J. Caldwell, which shall be charged as against any interest which said heir may have in the assets of said estate, or which may have been or may hereafter be derived directly or indirectly from the lands formerly belonging to the estate of H. Caldwell, which were sold and conveyed by J. E. Butler to Sallie B. Brown. (3) It is further agreed that W. D. Bridges shall select one man, or two men, as he may think best, to value all of the real estate formerly owned by H. Caldwell, and which was conveyed by J. E. Butler to Sallie Brown, and to value each tract or lot separately, and that the man or men so appointed shall take from the whole tract, or from the different tracts or parcels of tracts, an amount of land sufficient in value, which, according to their best judgment, will be sufficient within three years from the date of this agreement to yield the amount which may be necessary to pay the debt to Sallie Brown and repurchase the land, said land to be selected so as to cause the least detriment to the whole tract, which said land, when so set apart to pay said debt, shall be placed in the custody of a trustee, to be by him managed and sold at any time within three years, and out of the proceeds to pay said Sallie B. Brown the debt, or so much thereof as the proceeds of said land will pay. (Here follows instructions as to

how the trustee shall manage, and an agreement by each to sign a conveyance to the person purchasing from the trustee at the price agreed on by him.) (4) Of the land remaining after said sale has been made to pay said debt, the remainder shall be divided into four parts, each part of which shall be valued by said appraisers aforesaid, and each of said four heirs shall be entitled to one of the four parts so set apart, and shall have that portion as their part which may be designed by said appraisers, if said heirs shall be unable to agree upon their respective parts so set apart; but each heir shall take said one-fourth portion of said land charged with whatever balance may be ascertained to be due on the settlement of D. K. Caldwell in the probate court from prior advancements or paid him from said estate, and the same shall be subject to said debt before the title can vest in him or her, but the whole shall be subject to the prior debt or incumbrance of Sallie B. Brown. (5) If the amount paid shall not be sufficient to pay the same, then said trustee may take a portion of the land off of each of the divisions hereinbefore stated, as nearly equal as may be convenient, and to sell the same until an amount sufficient has been realied to pay said debt to Sallie B. Brown. (6) The amount found due, on the settlement of said D. K. Caldwell in said probate court, from each of the heirs of the estate is hereby declared a lien and charge on the interest set apart to such heir, and in default of payment said interest may be sold, and the amount remaining after paying said debt shall go to the heir aforesaid."

On the settlement appellant was found due the estate $27,538.55; G. B. Caldwell, $3,122.02; D. K.. Caldwell, $1,827.74; and S. Almena Caldwell, nothing. For some reason not appearing a sale was not made of the lot set apart to pay off the mortgage, and the incumbrance continued from year to year, being mortgaged first to J. E.

Butler, then to Sallie B. Brown, and finally to A. H. Moody. In 1904 certain creditors of appellant and G.. B. Caldwell sought to subject their interest in the land to certain judgments amounting to something over $10,000. All of the heirs, as well as the mortgagee, were made parties to this suit, and an agreement was reached amoung the parties by which $2,500 was agreed to be accepted in satisfaction of the judgment, and the lands were sold to pay the amount found due on the Moody mortgage, the compromise judgment, and the cost of the suit, and a sale was made under a decree of the chancery court in January, 1905, and Moody purchased the lands at the sum of $16,000, paid off the mortgage, and paid the balance into court, and shortly afterwards deeded said land to D. K. Caldwell and took a mortgage on it for the purchase money. About April, 1906, appellant and D. K. Caldwell became involved in a controversy and agreed upon an arbitration, agreeing each to leave to James W. Moody the amount that E. H. Caldwell should pay to A. H. Moody on the debt owing to Moody, and agreeing to quitclaim whatever interest D. K. Caldwell might have in the part set apart for E. H. Caudwell. The arbitrators declined to act, and later E. H. Caldwell appeared before him with a statement prepared by himself and requested the arbritrator to sign it, but he declined to do so, and after drawing a line under the figures furnished by appellant he wrote as follows: "According to the figures E. H. Caldwell furnishes me, he would owe a balance of $600; but D. K. Caldwell's claims will not figure that way"—and signs his name, and this in the absence of D. K. Caldwell. Thereupon E. H. Caldwell tendered $600, which was declined, where upon the bill was filed to enforce the arbitration. The bill further alleges that the deed from A. H. Moody to D. K. Caldwell was made in open violation of an oral

agreement made and entered into the day of and just prior to the foreclosure sale in the case of the creditors against the two Caldwells, whereby it is alleged that A. H. Moody agreed to buy the lands and give each of the heirs five years within which to redeem their respective portions. The bill was amended, and relief asked on the theory that D. K. Caldwell was equitable assignee of the said A. H. Moody, and that the appellant and other heirs might come in after an accounting and redeem their several portions of land.

R. W. CLOPTON, and WILSON & MARTIN, for appellant. Under the facts in this case complainant has the right to recover his part of the land by making equitable contribution.—*Jones v. Matkin,* 118 Ala. 341; Jones on Mortgages, sec. 1089, et seq., Pom. Eq. sec. 1220.

HUMES & SPEAKE, and LAWRENCE E. BROWN, for appellee. The case of *Wood v. Wood,* 134 Ala. 557, is conclusive upon complainant in this case.

ANDERSON, J.—The bill seems to have been primarily filed to specifically perform the award of an arbitrator, selected by the complainant and the respondent D. K. Caldwell. While the chancery court has the jurisdiction and power to enforce an award of arbitrators appointed by the parties. it is without authority to carry out mere agreements to submit matters in controversy to arbitration. Pomeroy's Spec. Performance of Contracts, § 291; 6 Pomeroy's Eq. Jur. § 758; 2 Story's Eq. Jur. § 1457. The prof shows that there was no award, as the arbitrator declined to act, and merely made a calculation for the complainant, based on his statement, and did not take into consideration the claim or statement of D. K. Caldwell, and what purports to be an award

expressly shows that it was but the result of a mere ex parte statement of the complainant, and does not attempt an adjustment of the question in controversy.

The second contention of the complainant is based upon a claim, under an oral agreement between A. H. Moody and the heirs, that after Moody bought the property, under the chancery sale, the heirs should have five years in which to redeem. This contention is not supported by the proof. But, if it be true that the transaction between Moody and D. K. Caldwell was but a redemption by the latter, under the disguise of a straight out purchase, and that it was for the benefit of all the heirs, upon contributing their pro rata towards the payment of the Moody mortgage, their right to redeem would not be cut off until a foreclosure of the mortgage, which could not take place until the law day, which would be the maturity of the debt, and which is not due for five years from the date of said mortgage. Moreover, they would have the statutory right to redeem within two years after foreclosure.

It would seem, from the agreement, signed by D. K. Caldwell, with the complainant, to arbitrate the difference, on April 3, 1906, and which was subsequent to the deal between said D. K. Caldwell and Moody, that there was a clear recognition by said D. K. Caldwell that the complainant was not precluded from retaining his land upon payment of his pro rata of what was due Moody. Conceding, therefore, that D. K. Caldwell was acting for and in behalf of the heirs, and that the deal with Moody was in the nature of a renewal or extension of existing incumbrances, we do not see how the complainant can obtain relief under the present bill. The bona fides of the Moody incumbrance for $16,000 are not questioned, and it is not due; and clearly the complainant cannot be benefited by now paying what is due

[Hurt v. Hurt, et al.]

by him to D. K. Caldwell and get a conveyance subject to a subsisting charge on the land. Nor can Moody be required to accept only a part of what is due him, or, in fact, all of it, until the maturity of the debt. The bill is therefore premature in this respect.

The decree of the chancery court, dismissing the bill of complaint, is affirmed.

Affirmed.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.

