(133 So. 899)

## CITY OF ANDALUSIA v. ALABAMA UTILITIES CO. et al.

4 Div. 520.

Supreme Court of Alabama.

Jan. 22, 1931.

Rehearing Denied April 30, 1931.

Marcus J. Fletcher and Powell, Albritton & Albritton, all of Andalusia, for appellant.

Rushton, Crenshaw & Rushton, of Montgomery, Chadbourne, Hunt, Jaeckel & Brown, of New York City, and Abner R. Powell, of Andalusia, for appellees.

BOULDIN, J.

By the bill the city of Andalusia seeks the specific performance of an option contract to purchase the waterworks and electric light plant serving the city and now owned by the respondents.

The option is embodied in an ordinance of April 30, 1904, entitled:

"An Ordinance.

"To provide for a public and private supply of water, electric light and power, in and near the town of Andalusia, in the State of Alabama, and granting unto Frank Sutter and his associates, successors and assigns. the right to construct, operate, maintain and own, a water works and electric light and power plant in said town and contracting with them for water for fire protection and other purposes, and for electric light and power for public purposes, for a period of 25 years and for the purchase of said water works and electric light and power plant, by the town."

The option provision is this: "Section 21. The town of Andalusia shall have the right and option to purchase the said water works and electric light and power plant with all its properties, rights, income, emoluments and hereditaments, after twenty-five years from the date of this ordinance, and if the town does not desire to purchase said works, plant and properties immediately after the lapse of twenty-five years, then its right to purchase shall be continuous, with one year's prior notice of intention. The price to be paid by the town may be fixed by mutual agreement, but in case of failure to agree, the price shall be fixed by arbitration as follows: three disinterested persons, none of whom shall be residents of Andalusia or pecuniarily interested in the said water works and electric light and power plant, shall be selected, one by the town, one by grantees, and one by the two so selected and the three shall under oath, appraise and fix the price to be paid by the town for the said property."

On the threshold of the case the question of chief concern is whether such an option is the subject of specific performance.

In Montgomery Gas-Light Co. v. City Council of Montgomery, 87 Ala. 245, 6 So. 113, 115, 4 L. R. A. 616, decided in 1889, and dealing with a like option incorporated in a franchise ordinance, this court declared: "There is no principle better settled in reason and by authority than that an executory contract for the sale of property, by the terms of which the price to be paid for the whole subject-matter is to be determined by appraisers to be selected directly or indirectly by the parties, cannot be specifically enforced in equity, so long as there is a failure from any cause to appoint referees, or a failure of such referees, after appointment, to assess the value. Vickers v. Vickers, L. R. 4 Eq. 532; Milnes v. Gery, 14 Ves. 400; Cooth v. Jackson, 6 Ves. 34; Thurnell v. Balbirnie, 2 Mees. & W. 786; 1 Benj. Sales, 54; 2 Benj. Sales, 755."

The case of Milnes v. Gery, 14 Vesey Jr. 399, cited as authority in the above excerpt, and recognized as a leading case in the authorities generally, including our own case of Howison v. Bartlett et al., 147 Ala. 408, 40 So. 757, dealt with an indenture authorizing a future sale of one-third interest in certain properties "for one third part or share of such price as the entirety of the same hereditaments shall be valued at by two different persons," one to be named by each of the parties interested, and in case of disagreement, the two to name a third, whose determination should be final. We quote from that decision the following:

"The more I have considered this case, the more I am satisfied, that, independently of all other objections, there is no such agreement between the parties, as can be carried into execution. The only agreement, into which the Defendant entered, was to purchase at a price to be ascertained in a specified mode. No price having ever been fixed in that mode, the parties have not agreed upon any price. Where then is the complete and concluded contract, which this Court is called upon to execute? The price is of the essence of a contract of sale. In this instance the parties have agreed upon a particular mode of ascertaining the price. The agreement, that the price shall be fixed in one specific manner, certainly does not afford an inference, that it is wholly indifferent, in what manner it is to be fixed. The Court, declaring, that the one shall take, and the other shall give, a price, fixed in any other manner, does not execute any agreement of their's; but makes an agreement for them; upon a notion, that it may be as advantageous as that, which they made for themselves. How can a man be forced to transfer to a stranger that confidence, which upon a subject, materially interesting to him, he has reposed in an individual of his own selection? No substantial difference arises from the circumstance, that in this case the decision may ultimately fall to an umpire, not directly nominated by the parties; as through the medium of the original nominees they had an influence upon the choice. No one could be chosen without the concurrence of the persons, in whose judgment they reciprocally confided.

"The case of an agreement to sell at a fair valuation is essentially different. In that case no particular means of ascertaining the value are pointed out: there is nothing therefore, precluding the Court from adopting any means adapted to that purpose. The case, in which the Court has modified particular, subordinate parts of an agreement, falls far short of the decree, that is now demanded. Perhaps some of those cases may be thought rather to require defence for the length to which they have gone, than to furnish a justification for still farther extending the discretionary power, of which they are instances. The Court never professes to bind a man to any agreement, except that, which he has made; but sometimes holds the agreement, which it executes, and that, which he has made, to be substantially the same; when to common understandings there is a very perceptible difference between them. The Court however, has never gone the length of compelling a party to buy or sell the whole subject of his agreement at a price, that he has never fixed, and that was never fixed in any mode to which he has given his consent."

In City of Anniston v. Alabama Water Co., 207 Ala. 497, 93 So. 409, the authority of Montgomery Gas-Light Co. v. Montgomery, supra, was recognized, and the general rule restated in substantially the words above quoted.

The Anniston Case involved a waterworks plant already in existence, the price whereof was fixed in the option agreement, and the arbitration feature related to valuation of betterments and extensions. The decision differentiates that from the Montgomery Case, holding the valuation of the improvements and extensions subsidiary, bringing it within the different rule recognized in the Montgomery Case "where the thing which is to be appraised by such valuers constitutes only a minor part of the subject-matter of the contract." See, also, Caldwell v. Caldwell, 157 Ala. 119; 47 So. 268.

Howison v. Bartlett, supra, related to the sale of a tract of land for an agreed price per acre. The only matter left open was a survey to ascertain the acreage, and the arbitration feature was the selection of a surveyor by agreement of parties to run the lines and determine the acreage. The court, in opinion by Mr. Justice Denson, reviews the decision in Milnes v. Gery, supra, and proceeds:

"The same doctrine has been followed in this country. Norfleet v. Southall, [3] Murp. [7 N. C.] 189; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 A. 4, 1 L. R. A. 380. 'This case has been approved and its doctrine followed in many subsequent ones, nor has it ever been repudiated; but the court in the most recent English decisions has declared that its doctrine should not be extended, but should be restricted in its application to the exact facts.' Mr. Pomeroy says there is a second class of contracts, 'which embraces those in which a mode for ascertaining the price is mentioned, but from the language of the stipulation it is regarded as nonessential, and as something by way of suggestion, so that the agreement itself is virtually one to sell for a fair price. The tendency of the later English decisions is to consider these stipulations for a determination of the price by third persons rather as matters of form than of substance, and to construe them in such manner that they become incidental to the main object of the agreement. The court will always look at the substance of the agreement, and disregard the mere forms which have been provided for effecting it, and which cannot be made operative.' Pomeroy on Contracts, §§ 150, 151. 'The result is that, while the case of Milnes v. Gery and the class of cases to which it belongs has not been repudiated, it is carefully restricted to the kind of contracts already mentioned. The court will treat the contract as falling within the second class, unless it would thereby do violence to the language and thwart the intent of the parties.' Pomeroy on Contracts, supra; Grosvenor v. Flint, 20 R. I. 21, 37 A. 304; Town of Bristol v. Bristol & W. Waterworks, 19 R. I. 413, 34 A. 359, 32 L. R. A. 740.

"The sense of these cases is that, where the contract specifies a mode of ascertaining the price which is essential, the contract is conditional until the ascertainment, and is absolute only when the price has been determined. If there be default in this respect the contract remains imperfect, and incapable of being enforced. Fry on Specific Per. 163. In this case the contract fixes the price to be paid for the lands and timber rights at six dollars per acre. So it cannot be reasonably said that the price is left open. The most that can be claimed by appellant with respect to this feature of the contract is that the total sum to be paid is dependent upon the number of acres. We have seen that the property is so described that it may be definitely located by parol proof, and that this character of proof is admissible. The only office left, then, to the surveyor to perform, would be to run out the lands and ascertain the number of acres. So with the price per acre given, and the property capable of being definitely located, we cannot,

after construing the contract as a whole, think that it was the intention of the parties that the selection of a surveyor should be an essential to its completion." Howison v. Bartlett, 147 Ala. 413, 414, 415, 40 So. 757, 759.

The case may be treated as an illustration of one in which the arbitration feature was merely subsidiary. The test declared is the "intention" of the parties as to whether it was an essential element of the contract.

■ Taking the definition of nonessential stipulations as above quoted from Mr. Pomeroy, the inquiry is: Does the language import the valuation feature is merely suggestive; is the agreement in itself virtually one to sell at a fair price?

The stipulation in the case before us is that, upon failure of parties to agree, the price of the subject matter of the purchase "shall be fixed by arbitration." Persons of stipulated qualifications "shall be selected," and they "shall, under oath, appraise and fix the price." This language is contractual, not suggestive of a plan which "may be" employed.

■ No argument is needed to the proposition that the price of the entire property sold is of the essence of a contract of sale.

Appellant relies upon the doctrine of specific performance in cases of part performance, contracts partially executed, as thus stated by Mr. Pomeroy: "It should also be remarked, before proceeding with the discussion, that when a contract has been partly performed by the plaintiff, and the defendant has received and enjoys the benefits thereof, and the plaintiff would be virtually remediless unless the contract were enforced, the court, from the plainest considerations of equity and common justice, does not regard with favor any objections raised by the defendant merely on the ground of incompleteness or uncertainty of the agreement. Even if the agreement be incomplete, the court will then, in furtherance of justice and to prevent a most inequitable result, decree a performance of its terms as far as possible." Pomeroy Spec. Per. (3d Ed.) § 145.

■ A mere option to purchase is executory per se. In the nature of it, the purchaser has the election to purchase or not.

But the insistence is that this option is a part of a more comprehensive contract, a franchise, looking to the construction and profitable operation of these plants through a long series of years; and that after all these benefits have been reaped, a valuable consideration for which the option was given, equity and justice cry out against a repudiation of contractual obligations in refusing to name an arbitrator, etc.

Without question the franchise rights and privileges constituted a consideration for the option itself. All options must be supported by a consideration as other contracts.

It cannot be said the benefits mentioned constitute part payment on the purchase price for the plants on exercise of the option.

The full value is to be fixed and paid as a condition of the purchase. The benefits accruing to the city and its inhabitants by the service rendered, along with the option to purchase, constitute the consideration for the franchise rights.

In this the present case is different from that presented in City of Dallas v. Gates (Or.) 289 P. 497. There the city advanced part of the money to build the waterworks. The transaction took the form of a lease for nominal rent, and, upon the exercise of the option of the city to take over the plant, the advance was to be deducted as part of the purchase price. The injustice attending noncompliance with the arbitration agreement is emphasized in that opinion as ground for treating it as merely auxiliary, and non-essential.

Castle Creek Water Co. v. City of Aspen, 146 F. 8, 8 Ann. Cas. 660, decided by United States Court of Appeals, Eighth Circuit, in a strong opinion by Circuit Judge Sanborn, and, dealing with a situation quite similar to this, sustains the contentions of appellant. This court is in entire sympathy with the policy shown in the trend of decisions, to award relief wherever possible against repudiation of contracts after benefits from the entire transaction have accrued, and the other party cannot be placed in statu quo.

At the same time, the courts, under guise of specific performance, cannot do violence to the contract itself, and make a contract for the parties.

The case of Montgomery Gas-Light Co. v. Montgomery, supra, so far as relates to this question, was like unto the case at bar. What was written was not dictum merely. The option was incorporated in a long term franchise looking to construction and operation of a lighting plant acquiring many franchise rights in consideration of the services, public and private, to be rendered, and, we may say, of the option agreement made part of the transaction. The decision treats the option to purchase as an executory agreement, and declares in unequivocal terms the law applicable to the case before the court.

Such was the declared law of Alabama when the contract now involved was entered into. It is in the nature of a rule of property. Appellant's bill cannot be sustained without overruling that case. It will be adhered to.

What we have written is not intended to pass upon the sufficiency of the election to purchase and notice thereof to put on respondents the duty to appoint an arbitrator; nor do we consider whether a new franchise was effectively granted, and, if so, whether it is still in force.

In no event, we think, can the complainant sustain the bill for specific performance.

Affirmed.

ANDERSON, C. J. and GARDNER and BROWN, JJ., concur.

### On Rehearing.

PER CURIAM.

Application overruled.

ANDERSON, C. J., and GARDNER, THOMAS, and BOULDIN, JJ., concur.

SAYRE and BROWN, JJ., dissent.

FOSTER, J., not sitting.

BROWN, J. (dissenting).

I am not willing to approve the opinion of the court in Montgomery Gas-Light Co. v. City Council of Montgomery, 87 Ala. 245, 6 So. 113, 4 L. R. A. 616, as establishing a rule of property.

The question of specific performance was not involved in that case, and what was said on that subject was in reply to the argument of the Montgomery Gas-Light Company that under the facts of that case such remedy would be an adequate remedy for the grievance complained of by the city, and that, therefore, the remedy pursued by the city—the ouster of the gas-light company—was destruction of its property rights, and the city council should be enjoined.

The holding in that case, in legal effect, is that there was no contract to be specifically performed, because the minds of the parties had not met on a price to be paid, an essential element of the contract, thus adopting the controlling thought in the old English case, Milnes v. Gery, 14 Vesey, Jr. 399.

Still the opinion in the Montgomery Gas-Light Company Case holds that the city council was within its right in ignoring the gas-light company in contracting with another, because it (the gas-light company) had violated its contract, by refusing to appoint an arbitrator.

These are clearly inconsistent ideas—no contract and a breach of contract.

I think it clear that the writer of the opinion in Montgomery Gas-Light Company v. City Council of Montgomery had no thought of laying down the rule that would enable a party to deliberately enter into a contract,

to be violated with impunity, or to hold that the courts are powerless to protect the other party.

Milnes v. Gery, supra, has in effect been repudiated by the English courts—certainly it has been limited to the facts of that case—where the parties failed to make a binding contract. See comment in Howison v. Bartlett et al., 147 Ala. 408, 40 So. 757.

Here the contract between the parties, in a large measure, has been fully executed, and it appears that the complainant has lived up to all of its obligations. To now deny it a remedy by compelling specific performance is to ignore the provisions of the Constitution: "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; *and right and justice shall be administered* without sale, denial, or delay." (Italics supplied.) Constitution 1901, § 13.

SAYRE, J., concurs in the foregoing.