THOMPSON, Presiding Judge.
 

 Alexander J. Saad, Leland L. Saad, Teresa H. Saad, Jan A. Saad, Elias J. Saad, and SEI-I, LLC, appeal from the Mobile Circuit Court’s partial summary judgment in favor of Gregory B. Saad (“Greg Saad”) ordering certain injunctive relief in the form of specific performance. Jurisdiction over the appeal is appropriate pursuant to Rule 4(a)(1), Ala. R.App. P., which provides for appeals from interlocutory orders granting injunctive relief.
 
 [1]
 
 For the reasons stated herein, we reverse the summary judgment and remand the cause.
 

 Considered in the light appropriate to our standard of review of a summary judgment,
 
 see
 
 infra, the record reveals the following facts. Alexander J. Saad, Leland L. Saad, Elias J. Saad, Greg Saad, Barbara S. Fulghum, and Dorothy S. Dunning are siblings. On January 11, 2005, the six siblings, Leland’s, Elias’s, Greg’s, and Barbara’s spouses, and Greg’s two sons, formed SEI-I, LLC (“SEI”), with all the foregoing individuals serving as members of SEI,
 
 [2]
 
 for the purpose of purchasing six condominium units from Crystal Tower, LLC. Thereafter, SEI purchased the six condominium units from Crystal Tower with the purchase being financed, in part, by a loan from Vision Bank (“the Vision Bank loan”). The members of SEI agreed to serve as guarantors on the Vision Bank loan, with each member of SEI agreeing to guaranty a percentage of the loan equal to 125% of his or her ownership percentage of SEI.
 

 In 2006, the members of SEI agreed to divide the six condominium units among each of the six family groups and to satisfy the loan from Vision Bank by each family group’s obtaining a loan secured by a mortgage in its and SEI’s names on the family group’s assigned condominium unit, with the proceeds of each loan to be applied to the satisfaction of the Vision Bank loan. An essential element of this agreement was that each of the new loans and mortgages was to close contemporaneously. One of the benefits of the agreement was that each family group would be liable individually only for the loan that covered the condominium unit assigned to that family group instead of being liable for the Vision Bank loan, which covered all six condominium units.
 

 Permanent financing for the six condominium units was arranged with Regions Bank. In October 2006, five of the six family groups entered into the arranged financing pursuant to the SEI members’ agreement. Greg Saad and his wife, Jamie (collectively, “Greg and Jamie Saad”), refused to do so. As a result, a portion of the loan from Vision Bank remained outstanding, and all of the members of SEI remained liable as guarantors on that loan.
 

 On April 30, 2008, Alexander Saad, Leland Saad, Teresa Saad (Leland’s wife), Elias Saad, Jan Saad (Elias’s wife) (collec
 
 *709
 
 tively, “the Saad plaintiffs”), and SEI filed a two-count complaint against, among others, Greg and Jamie Saad, Barbara Fulg-hum, Henry Fulghum (Barbara’s husband), and Dorothy Dunning (collectively, “the Saad Defendants”). In their first count, the Saad plaintiffs and SEI alleged that Greg and Jamie Saad’s failure to obtain financing for the condominium unit assigned to their family group (hereinafter referred to as “Unit 1207”) constituted a breach of the agreement reached by the members of SEI to obtain such individual financing and that their breach caused injury to the Saad plaintiffs as well as to the Saad defendants who had performed their obligations pursuant to the agreement. In their second count, the Saad plaintiffs and SEI alleged that the Saad plaintiffs owned, collectively, a 50% interest in SEI, while the Saad defendants owned, collectively, the other 50% interest in SEI. They alleged that the Saad defendants failed or refused to join with the Saad plaintiffs in calling for a meeting of SEI’s members, such that, under SEI’s bylaws, a meeting of SEI’s membei’s could not be held. As a result, they alleged, SEI was unable to take any action with regal’d to dealing with its indebtedness to Vision Bank, obtaining title to Unit 1207, as it had done with regard to the other five units, and formulating a plan to deal with the ownership and disposition of the condominium units. The Saad plaintiffs and SEI sought an order requiring, among other things, that a deed be obtained to Unit 1207 that vested title in SEI and requiring Greg and Jamie Saad to repay the outstanding balance of SEI’s loan from Vision Bank along with all costs related to the Vision Bank loan.
 

 In early May 2008, Greg Saad, through JCC, L.L.C., a company that he owned, paid off the balance of the Vision Bank loan and title of Unit 1207 was vested in SEI. On May 5, 2008, he proposed to execute a promissory note in favor of JCC, L.L.C., listing himself, his wife Jamie, and SEI as borrowers, for the amount JCC, L.L.C., had paid Vision Bank to satisfy the Vision Bank loan and to execute a mortgage on Unit 1207 in favor of JCC, L.L.C., as security for the promissory note. The Saad defendants consented to this arrangement; the Saad plaintiffs did not. Thus, because each set of parties represented 50% of the membership interest of SEI, no action was taken on Greg Saad’s proposal.
 

 On May 18, 2008, Saad Enterprises, Inc., filed a motion to intervene in the action; that motion was subsequently granted. In its complaint in intervention, it asserted a claim against SEI alleging breach of contract and money loaned. It alleged that SEI had established a line of credit with it and that, pursuant to that line of credit, SEI was now indebted to it in the amount of $878,144. It alleged that the debt had matured on January 17, 2008.
 

 On June 2, 2008, the Saad defendants filed an answer to the Saad plaintiffs’ complaint and filed a six-count counterclaim against the Saad plaintiffs. In their counterclaim the Saad defendants alleged that Greg Saad had chosen not to obtain a loan from Regions Bank as had the other Saad siblings because he was dissatisfied with the proposed loan agreement with Regions Bank. They alleged that Greg Saad had arranged for and had caused the remaining balance of the Vision Bank loan to be paid in full and that he had arranged for a deed to be executed that vested SEI with title to Unit 1207. In the first count of their counterclaim, titled “Declaratory Judgment, Injunctive Relief and Specific Performance,” the Saad defendants alleged that SEI had refused to execute a mortgage to JCC, L.L.C., as Greg Saad had requested, and that the effect of this refusal was to leave Unit 1207 unencumbered
 
 *710
 
 and available to be seized by Saad Enterprises to satisfy any judgment that Saad Enterprises might obtain through its complaint in intervention. The Saad defendants alleged that, by refusing to consent to SEI’s execution of a mortgage to JCC, L.L.C., the Saad plaintiffs had violated their agreement with regard to the refinancing of the six condominium units. The Saad defendants sought an order requiring SEI to execute a mortgage covering Unit 1207 to JCC, L.L.C., and to execute a promissory note in favor of JCC, L.L.C., in the amount of $367,000. In the remaining counts of their counterclaim, the Saad defendants asserted, among other things, that the Saad plaintiffs had committed fraud and misrepresentation with regard to the refinancing agreement and that Alexander Saad had caused SEI improperly to distribute funds to SEI’s members.
 

 In September 2008, Greg Saad obtained a mortgage proposal from Bancorpsouth Bank, which he presented to the members of SEI, under which SEI would become obligated on a $350,000 loan from Bancorp-south Bank, with the proceeds of that loan being paid to Greg Saad to reimburse him for having arranged to have JCC, L.L.C., pay off the remaining obligation on the Vision Bank loan, and with Bancorpsouth Bank obtaining a mortgage on Unit 1207 to secure payment of the loan. The SEI plaintiffs did not consent to this loan arrangement.
 

 On October 13, 2008, the Saad plaintiffs and SEI amended their complaint by adding Regions Bank as a defendant. They also supplemented their complaint by alleging that the payment of the outstanding balance of the Vision Bank loan in May 2008 had caused Greg Saad, as the owner of JCC, L.L.C., to become an unsecured creditor of SEI and that, if they consented to the mortgage to JCC, L.L.C., which Greg Saad owned and controlled, Greg Saad would have taken a secured interest in Unit 1207 to the detriment of Regions, SEI, and the other unsecured creditors of SEI. They alleged that, “having been vested with an unencumbered interest in Unit 1207, neither SEI nor its individual members [were] at liberty to show preference to the claims of one unsecured creditor over the claims of another unsecured creditor and that to do so may subject them to double, multiple or inconsistent obligations to Regions [Bank] or to any of the other unsecured creditors.” In their ad dam-num clause, the Saad plaintiffs and SEI withdrew their prior claims for relief and indicated that they sought an order declaring the rights of all the parties.
 

 On October 14, 2008, the Saad defendants supplemented their counterclaim to include allegations relative to the Bancorp-south Bank mortgage proposal. They also amended their counterclaim to assert two additional counts. In a new count titled “Equitable Mortgage,” the Saad defendants alleged that the payment of the balance of the Vision Bank loan, among other things, caused Greg and Jamie Saad to have an equitable mortgage on Unit 1207, and they requested that the trial court enter an order declaring that Greg and Jamie Saad held an equitable mortgage on Unit 1207 should the trial court determine not to require SEI to execute a mortgage relative to Unit 1207 with the proceeds of the loan being paid to Greg and Jamie Saad. In a new count titled “Constructive Trust,” the Saad defendants alleged that SEI and the Saad plaintiffs had been unjustly enriched by SEI’s holding title to Unit 1207 despite the fact that Greg Saad, through JCC, L.L.C., had paid the balance of the Vision Bank loan, and they requested that, should the trial court not require SEI to execute a mortgage with the proceeds thereof being paid to Greg and Jamie Saad, the trial court enter an order
 
 *711
 
 declaring that SEI holds Unit 1207 in a constructive trust for the benefit of Greg and Jamie Saad.
 

 Also on October 14, 2008, the same day the Saad defendants supplemented and amended them counterclaim, Greg and Jamie Saad filed a motion for a partial summary judgment as to the portion of the first count in the Saad defendants’ counterclaim seeking declaratory relief and specific performance of the refinancing agreement alleged therein. In their motion, Greg and Jamie Saad asserted that the refinancing agreement required each of the family groups to obtain financing for the condominium unit for which it was responsible, that five of the six family groups had done so, but that SEI had refused to consent to the execution of a note and mortgage with regard to Unit 1207. Based on these facts, Greg and Jamie Saad argued that they were entitled to an order from the trial court requiring SEI to execute the Bancorpsouth Bank mortgage, note, and other related documents, authorizing Greg Saad to execute those documents on behalf of SEI, and ordering that the proceeds of the loan be paid to Greg and Jamie Saad.
 

 In their response to the partial-summary-judgment motion, the Saad plaintiffs and SEI argued, among other things, that the refinancing agreement into which the members of SEI had entered called for the family groups to enter into financing agreements covering their respective condominium units contemporaneously. They argued that there was no agreement among the parties that any of the members were entitled to delay entering into a financing agreement for his or her family group’s assigned condominium unit until well after the other five family groups had entered into their respective financing agreements. The Saad plaintiffs and SEI attached to their response the affidavit of Elias Saad, one of the Saad plaintiffs. His affidavit includes the following testimony:
 

 “4. In 2006, the Members of SEI agreed that SEI would satisfy the Vision Bank debt by obtaining six mortgages with one mortgage each on the six Units. SEI Members agreed to serve as co-makers on the six mortgages provided that, as an essential element of this agreement, the six mortgages were to close contemporaneously or a closing so nearly contemporaneously as to amount to the same. This process assured that all of the SEI Members would be treated equally and would have substantially the same obligations and benefits.
 

 “5. Greg and Jamie Saad were to close on a mortgage as co-makers with SEI for Unit 1207.
 

 “6. All SEI Members fulfilled their agreement except Greg and Jamie Saad. Because of their breach of the agreement, SEI’s debt with Vision Bank remained unpaid and each of the other SEI Members remained obligated under the guaranty agreement with Vision. This was to the detriment of SEI and each of its other Members. However, Greg and Jamie Saad enjoyed the unjust enrichment of having their contingent liability for five condominium units satisfied while not increasing their contingent liability for the sixth Unit.
 

 “7. Neither I nor the other Members of SEI consented or agreed that Greg and Jamie Saad could delay closing of a sixth mortgage on Unit 1207 until a time that suited them or that the consent for such a mortgage would be open ended.”
 

 On November 3, 2008, the trial court entered an order granting the October 14, 2008, motion for a partial summary judg
 
 *712
 
 ment as to Greg Saad.
 
 [3]
 
 It entered a judgment in his favor as to the first count of the Saad defendants’ counterclaim, as well as to the counts added by amendment pertaining to the alleged equitable mortgage and constructive trust. The trial court ordered SEI to execute the Bancorp-south Bank mortgage, note, and other related documents; it authorized Greg Saad to execute those documents on behalf of SEI; and it ordered that the proceeds of the Bancorpsouth Bank loan be paid to Greg Saad. The trial court purported to certify its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.
 
 [4]
 

 On the same day the trial court entered the partial summary judgment, the Saad plaintiffs and SEI filed a notice of appeal to the supreme court in which they named Greg and Jamie Saad as appellees. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 

 The standard by which we review a summary judgment is well settled:
 

 “We review [a summary judgment]
 
 de novo,
 
 applying the oft-stated principles governing appellate review of a trial court’s grant or denial of a summary-judgment motion:
 

 “ We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’ ”
 

 American Liberty Ins. Co. v. AmSouth Bank,
 
 825 So.2d 786, 790 (Ala.2002) (quoting
 
 Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C.,
 
 792 So.2d 369, 372 (Ala.2000)).
 

 
 *713
 
 We ton first to the question whether Jamie Saad is a proper appellee in this proceeding. As previously noted
 
 (see
 
 note 3, supra), although both Greg and Jamie Saad moved the trial court to enter a partial summary judgment in their favor, the trial court’s judgment references only Greg Saad and appears to enter a judgment only in his favor. The trial court did not resolve the motion as that motion applied to Jamie Saad. Because there was no judgment entered resolving the motion as to her, the motion, as it relates to her, remains pending in the trial court. As such, there is no judgment pertaining to her over which this court is able to exercise jurisdiction, and, as a result, to the extent that the Saad plaintiffs and SEI purport to appeal as to a judgment they believe to have been entered in her favor, them appeal is due to be dismissed.
 

 We turn now to the merits of the trial court’s judgment entered in favor of Greg Saad. The Saad plaintiffs and SEI contend, among other things, that the trial court’s entry of a partial summary judgment in favor of Greg Saad was in error because the basis of the claim at issue in this appeal is an agreement, the terms of which are in dispute. We agree.
 

 In the first count of their counterclaim, on which the trial court granted a summary judgment, the Saad defendants alleged that the members of SEI had entered into an agreement whereby each family group would obtain an individual mortgage in the names of SEI and the member or members of SEI representing that family group and that, although five of the six family groups had been able to comply with that agreement, SEI and the Saad plaintiffs had breached that agreement by preventing Greg and Jamie Saad from being able to do so.
 
 [5]
 
 The relief that Greg Saad sought in his motion as to that count, and which the trial court granted, was an order requiring specific performance of the agreement by having SEI execute a mortgage and related documents financing Unit 1207.
 

 At a trial, the Saad defendants would have borne the burden of proof as to their claim for specific performance.
 
 See Luker v. Hyde,
 
 260 Ala. 248, 253, 69 So.2d 421, 425 (1954) (“In this case the burden of proof is upon appellant to prove the contract of which she seeks specific performance by clear and satisfactory evidence.”).
 
 Cf.
 
 Penny A. Davis,
 
 Tilley’s Alabama Equity
 
 § 3:10 (4th ed. 2002) (“In suits for specific performance the law requires great accuracy of allegations of facts and strict correspondence of proof. The plaintiff must establish his case by such evidence as to produce clear conviction in the judicial mind.” (footnote omitted)). As a result, in seeking a partial summary judgment on that count, Greg Saad bore the burden of demonstrating that the evidence, considered in the light most favorable to SEI and the Saad plaintiffs, established without material dispute that he was entitled to a judgment of specific performance.
 
 See Ex parte Ramsay,
 
 829 So.2d 146, 152-53 (Ala.2002);
 
 Ex parte General Motors Corp.,
 
 769 So.2d 903, 909 (Ala.1999).
 

 “The equitable remedy of specific performance rests largely in the discretion of the trial judge, and whether relief shall be granted depends upon a consideration of the particular circumstances of each case.”
 
 Allen v. Stone,
 
 579 So.2d 1316, 1318-19 (Ala.1991). However,
 

 “a party who has not shown such a performance of, or willingness upon his
 
 *714
 
 part to comply with, the terms of a contract within a reasonable time may not compel performance by the other party to the contract....
 

 “Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party.”
 

 Durden v. Furniture Fair of Dothan, Inc.,
 
 348 So.2d 1375, 1376 (Ala.1977).
 
 See also Tilley’s Alabama Equity
 
 § 3:6 (“A party who has not shown such a performance of the contract or willingness upon his part to comply with the terms of a contract within a reasonable time may not compel performance by the other party to the contract”). Moreover, “the courts, under guise of specific performance, cannot do violence to the contract itself, and make a contract for the parties.”
 
 City of Andalusia v. Alabama Utils. Co.,
 
 222 Ala. 689, 693, 133 So. 899, 902 (1931).
 

 The evidence that the parties submitted in support of and in opposition to Greg and Jamie Saad’s motion for a partial summary judgment demonstrates a dispute as to a material issue affecting Greg Saad’s entitlement to the judgment he sought. Particularly, in an affidavit attached to SEI and the Saad plaintiffs’ brief opposing summary judgment, Elias Saad testified that the agreement into which the members of SEI had entered required that each family group obtain individual financing for their respectively assigned condominium units contemporaneously or nearly contemporaneously and that this part of the agreement was essential. The purpose of contemporaneous closings, he testified, was to ensure that all the members of SEI would be treated equally and would enjoy the same obligations and benefits. Instead of obtaining financing like the other five family groups, however, Greg and Jamie Saad failed to do so, the effect of which, according to Elias Saad, was to leave in place a debt of SEI’s that otherwise would have been paid off, as well as to force the members of SEI to continue as guarantors of that debt.
 
 [6]
 

 Because the record reflects that there is a genuine issue of material fact with regard to whether Greg Saad complied with the agreement of which he sought specific performance, he was not entitled to a summary judgment as to that claim.
 
 See Dur
 
 
 *715
 

 den,
 
 348 So.2d at 1376. As a result, the trial court erred when it entered a partial summary judgment ordering specific performance of the agreement, and its judgment is due to be reversed.
 
 [7]
 

 We recognize that the trial court purported to enter a partial summary judgment in favor of Greg Saad on the counts of the Saad defendants’ counterclaim seeking a declaration that Greg and Jamie Saad had an equitable mortgage covering Unit 1207 and a declaration that SEI held Unit 1207 in a constructive trust for Greg and Jamie Saad. However, by the explicit terms of those counts, the Saad defendants sought such declarations only to the extent that the trial court determined not to require SEI to execute a mortgage relative to Unit 1207 with the proceeds of the loan being paid to Greg and Jamie Saad. Because the trial court, in fact, required SEI to execute such a mortgage, the contingency under which the Saad defendants sought relief in those counts did not occur, and there was no basis for the entry of a judgment as to those counts. Moreover, although it purported to enter a judgment as to those counts in Greg Saad’s favor, the trial court did not actually grant the relief sought in those counts. Specifically, the trial court failed to declare that Greg and Jamie Saad had an equitable mortgage covering Unit 1207 and that SEI held Unit 1207 in trust for them. Indeed, we note that any such declaration simply would not be compatible with the specific performance ordered by the court. Thus, as to that portion of the partial summary judgment purporting to enter a judgment as to those two counts, we regard the trial court’s judgment as determining merely that, in resolving the count seeking specific performance of the parties’ agreement, the trial court recognized that it had resolved those other counts.
 

 Based on the foregoing, we dismiss that portion of the appeal that seeks reversal of a judgment that was never entered regarding Jamie Saad, we reverse the trial court’s partial summary judgment entered in favor of Greg Saad, and we remand the cause to the trial court for further proceedings.
 

 APPEAL DISMISSED IN PART; JUDGMENT REVERSED IN PART; AND REMANDED.
 

 BRYAN and THOMAS, JJ„ concur.
 

 MOORE, J., concurs in the result, without writing.
 

 PITTMAN, J., recuses himself.
 

 [1]
 

 . The trial court purported to certify its partial summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. As discussed herein
 
 (see
 
 note 4, infra), this certification was inappropriate and did not render the judgment final. Thus, this court’s jurisdiction is founded on Rule 4(a)(1), Ala. R. Civ. P., which provides for an appeal from, among other things, an interlocutory order granting an injunction.
 

 [2]
 

 . Greg Saad assumed the obligations of his sons relating to their membership in SEI.
 

 [3]
 

 . The trial court did not reference Jamie Saad; presumably, to the extent that the relief granted by the trial court would have been enlarged were the motion granted as to both Greg Saad and Jamie Saad, that portion of the motion pertaining to Jamie Saad remains pending in the trial court.
 

 [4]
 

 . The trial court’s certification of finality was not effective because the Saad plaintiffs and SEI's claim seeking a declaration as to the rights of all the parties is too closely intertwined with those portions of the counterclaim resolved by the trial court’s partial summary judgment.
 
 See BB & S Gen. Contractors, Inc. v. Thornton &
 
 Assocs.,
 
 Inc.,
 
 979 So.2d 121, 123 (Ala.Civ.App.2007) ("When pending claims ' "are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results,” ’ our courts may determine a Rule 54(b) certifica-lion to be invalid.” (quoting
 
 Gray v. Central Bank of Tuscaloosa, N.A.,
 
 519 So.2d 477, 479 (Ala.1987), quoting in turn
 
 Branch v. South-Trust Bank of Dothan, N.A.,
 
 514 So.2d 1373, 1374 (Ala.1987))). However, the partial summary judgment granted injunctive relief in favor of Greg Saad in the form of specific performance, and an interlocutory order granting injunctive relief is appealable within 14 days from the date of its entry.
 
 See
 
 Rule 4(a)(1), Ala. R.App. P.;
 
 Dawkins v. Walker,
 
 794 So.2d 333, 335 (Ala.2001). The Saad plaintiffs and SEI appealed from the trial court’s partial summary judgment to the supreme court on the day the judgment was entered. This court’s exercise of jurisdiction over the appeal following its transfer from the supreme court is therefore appropriate pursuant to Rule 4(a)(1), Ala. R.App. P.
 

 [5]
 

 . Although the Saad defendants titled their first count "Declaratory Judgment, Injunctive Relief and Specific Performance," they did not, in that count, seek an order from the trial court declaring the parties' rights and obligations.
 

 [6]
 

 . We note Greg Saad's argument that his brothers had told him that he should obtain a mortgage on Unit 1207 and that, based on that direction, he had arranged to pay off the Vision Bank loan and had presented two mortgage options to the members of SEI. Even if this argument presented a basis on which to affirm the trial court’s judgment, a question we do not address, the evidence Greg and Jamie Saad submitted in support of their motion provides no support for this contention. Although Greg Saad testified in his affidavit that his brothers had requested that he obtain a mortgage on Unit 1207, he did not indicate when they did so, and he did not indicate that he had arranged to pay off the Vision Bank loan based on their request that he do so. Although he attached copies of certain e-mails to his brief in support of summary judgment in which it appears, among other things, that one of his brothers had requested that he obtain a mortgage on Unit 1207, the trial court was precluded from considering those e-mails because, as SEI and the Saad plaintiffs argued to the trial court and as they argue in this appeal, Greg and Jamie Saad failed to offer evidence that those e-mails were authentic.
 
 See
 
 Rule 901(a), Ala. R. Evid. ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”);
 
 Tanksley v. ProSoft Automation, Inc.,
 
 982 So.2d 1046, 1053 (Ala.2007) ("Documents submitted in support of or in opposition to a summary-judgment motion are generally required to be certified or otherwise authenticated; if they are not, they constitute inadmissible hearsay and are not considered on summary judgment.”).
 

 [7]
 

 . By resolving the appeal in this manner, we do not address SEI and the Saad plaintiffs' other contentions asserting error in the entry of the partial summary judgment.